# U.S. District Court
# Eastern District of Missouri (Cape Girardeau)
# CIVIL DOCKET FOR CASE #: 1:24−cv−00194−SPM
## *Internal Use Only*

Johnson v. Satterfield et al
Assigned to: Magistrate Judge Shirley Padmore Mensah
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 10/17/2024
Date Terminated: 11/22/2024
Jury Demand: None
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**Benny Johnson** represented by **Benny Johnson**
1368576
ERDCC
Eastern Reception Diagnostic and Correctional Center
2727 Highway K
Bonne Terre, MO 63628
PRO SE

V.

**Defendant**

**Joe Z. Satterfield**
*Court Judge, Division I*

**Defendant**

**Robert N. Mayer**
*Circuit Court Judge*

**Defendant**

**Honorable John C. Speilman**
*Circuit Court Judge*

**Defendant**

**Nicholas D. Jain**
*Prosecutor*

**Defendant**

**Russell Oliver**
*Prosecutor*

**Defendant**

**Tim G. Pulley**
*Missouri Highway Patrol*

**<u>Defendant</u>**

**Jeremy Jones**
*Criminalist Supervisor*

**<u>Defendant</u>**

**Todd Watson**

**<u>Defendant</u>**

**Aaron Grainger**

**<u>Defendant</u>**

**Josh Roberts**

**<u>Defendant</u>**

**John McMullan**
*Attorney*

**<u>Defendant</u>**

**James Smith**

**<u>Defendant</u>**

**Justin Claibourn**
*Deputy*

**<u>Defendant</u>**

**Nicole Green**
*Administrator Dunklin County Justice Center*

**<u>Defendant</u>**

**Ashley Graham**
*Nurse*

**<u>Defendant</u>**

**Dewayne Rhody**
*Medical Lab Technician*

**<u>Defendant</u>**

**Kelli Asher**

**<u>Defendant</u>**

**June Robinson**

**<u>Defendant</u>**

**Tayhlar Santana**

**Defendant**

**Brant Bristow**

**Defendant**

**Jesse Curtis**

**Defendant**

**Brian Wicker**

**Defendant**

**Bob Holder**

**Defendant**

**Carl Heifner**

Email All Attorneys
(will not send to terminated parties)

Email All Attorneys and Additional Recipients
(will not send to terminated parties)

| Date Filed | # | Docket Text |
|---|---|---|
| 10/17/2024 | 1 | DCM COMPLAINT against defendant All Defendants, filed by Benny Johnson.(JMC) (Entered: 10/17/2024) |
| 10/17/2024 | 2 | MOTION for Leave to Proceed in forma pauperis under 42:1983 (prisoner) by Plaintiff Benny Johnson. (JMC) (Entered: 10/17/2024) |
| 10/17/2024 | 3 | Certified Inmate Account Statement by Plaintiff Benny Johnson. (JMC) (Entered: 10/17/2024) |
| 10/17/2024 | | Case Opening Notification. Judge Assigned: U.S. Magistrate Judge Shirley P. Mensah. All parties must file the Notice Regarding Magistrate Judge Jurisdiction Form consenting to or opting out of the Magistrate Judge jurisdiction. Click here for the instructions. (JMC) (Entered: 10/17/2024) |
| 10/17/2024 | | ***Complaint Letter Created. This is to advise you that this office has received and filed your complaint and has assigned it the above−referenced case number. (JMC) (Entered: 10/17/2024) |
| 10/17/2024 | | ***Complaint Letter Processed (see notice of electronic filing for distribution list) Thu Oct 17 15:00:53 CDT 2024 (admin,) (Entered: 10/17/2024) |
| 10/17/2024 | 4 | Pursuant to Local Rule 2.08, the assigned/referred magistrate judge is designated and authorized by the court to exercise full authority in this assigned/referred action or matter under 28 U.S.C. Sec. 636 and 18 U.S.C Sec. 3401, including any case budgeting matters. (auto) (Entered: 10/17/2024) |
| 11/22/2024 | 5 | OPINION MEMORANDUM re: 2 MOTION for Leave to Proceed in forma pauperis under 42:1983 (prisoner) filed by Plaintiff Benny Johnson. IT IS HEREBY ORDERED that plaintiff's motion seeking leave to commence this action without prepaying fees or |

| | | |
|---|---|---|
| | | costs [ECF No. 2] is GRANTED. IT IS FURTHER ORDERED that, within twenty−one (21) days of the date of this order, Plaintiff must pay an initial filing fee of $37.58. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding. IT IS FURTHER ORDERED that plaintiff's claims of unlawful conditions of confinement and deliberate indifference to his serious medical needs are SEVERED AND DISMISSED without prejudice. See Fed. R. Civ. P. 21. IT IS FURTHER ORDERED that all remaining federal claims in this action are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). IT IS FURTHER ORDERED that any state law claims brought by plaintiff in this action are DISMISSED without prejudice. See 28 U.S.C. § 1367(c). A separate Order of Dismissal shall accompany this Memorandum and Order. (Initial Partial Filing Fee due by 12/13/2024.) Signed by District Judge Henry Edward Autrey on 11/22/2024. (CMH) (Entered: 11/22/2024) |
| 11/22/2024 | 6 | ORDER OF DISMISSAL pursuant to 28USC1915(e)(2)(B) IT IS HEREBY ORDERED that plaintiff's complaint is DISMISSED, Without Prejudice IT IS HEREBY CERTIFIED that an appeal from this dismissal would not be taken in good faith pursuant to 28USC1915(a)(3). IT IS HEREBY ORDERED that plaintiff's claims of unlawful conditions of confinement and deliberate indifference to his serious medical needs are SEVERED AND DISMISSED without prejudice. See Fed. R. Civ. P. 21.IT IS FURTHER ORDERED that all remaining federal claims in this action are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).IT IS FURTHER ORDERED that any state law claims brought by plaintiff in this action are DISMISSED without prejudice. See 28 U.S.C. § 1367(c).IT IS HEREBY CERTIFIED that an appeal from this action would not be taken in good faith. Signed by District Judge Henry Edward Autrey on 11/22/2024. (CMH) (Entered: 11/22/2024) |
| 11/22/2024 | 7 | Letter from Clerk sent to pro−se prisoner re:FRAP − all procedures for filing Notice of Appeal (copy of motion to proceed IFP on appeal attached and mailed) (CMH) (Entered: 11/22/2024) |
| 12/09/2024 | 8 | SUPPLEMENTAL re 1 DCM Complaint by Plaintiff Benny Johnson. (CMH) (Entered: 12/09/2024) |
| 12/30/2024 | 9 | Request for status of appeal by Plaintiff Benny Johnson. NOTE: Copy of 12/09/2024 filing and current docket sheet mailed to Benny Johnson. No appeal of record to date in this case. (CMH) (Entered: 01/03/2025) |
| 02/12/2025 | 10 | NOTICE OF APPEAL as to 6 Order of Dismissal pursuant to 28USC1915(e)(2)(B),,, by Plaintiff Benny Johnson. (Attachments: # 1 Letters to Court, # 2 Motion to Amend Plaintiff's Petition − Directed to U.S. Court of Appeals, # 3 Proposed Amended Petition, # 4 Envelope)(CMH) (Entered: 02/12/2025) |
| 02/12/2025 | 11 | MOTION for Leave to Proceed in forma pauperis on appeal under 42:1983 (prisoner) by Plaintiff Benny Johnson. (CMH) (Entered: 02/12/2025) |
| 02/12/2025 | 12 | Certified Inmate Account Statement by Plaintiff Benny Johnson. (CMH) (Entered: 02/12/2025) |
| 02/14/2025 | 13 | OPINION, MEMORANDUM AND ORDER re: 11 MOTION for Leave to Proceed in forma pauperis on appeal under 42:1983 (prisoner) filed by Plaintiff Benny Johnson. IT IS HEREBY ORDERED that plaintiff's post−dismissal motion to amend his complaint [ECF No. 10] is DENIED. IT IS FURTHER ORDERED that plaintiff's motion to proceed in forma pauperis on appeal [ECF No. 11] is DENIED. The Clerk shall process |

| | | |
|---|---|---|
| | | plaintiff's appeal. IT IS FURTHER ORDERED that an appeal of this Order would not be taken in good faith. Signed by District Judge Henry Edward Autrey on 02/14/2025. (CMH) (Entered: 02/14/2025) |
| 02/14/2025 | | ORDER RECEIPT: (see receipt) Docket No: 13. Fri Feb 14 14:08:55 CST 2025 (CMH) (Entered: 02/14/2025) |
| 02/18/2025 | 14 | NOTIFICATION OF APPEAL AND NOA SUPPLEMENT by clerk to USCA regarding 10 Notice of Appeal,. Notice of Appeal filed on 2/12/2025 by Plaintiff Benny Johnson. NOTIFICATION TO COUNSEL AND PRO SE PARTY: FILE REQUEST FOR TRANSCRIPT WITH DISTRICT COURT CLERKS OFFICE.(JMC) (Entered: 02/18/2025) |

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| BENNY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-CV-00194 SPM |
| | ) | |
| JOE Z. SATTERFIELD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on the motion of plaintiff Benny Johnson, an inmate at Eastern Reception Diagnostic and Correctional Center (ERDCC), for leave to commence this civil action without prepaying fees or costs. [ECF No. 2] The Court will grant the motion and assess an initial partial filing fee of $37.58. Furthermore, after reviewing the pleadings in this matter, the Court will dismiss this action for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10, until the filing fee is fully paid. *Id.*

A review of plaintiff's account from the relevant six-month period indicates an average monthly deposit of $187.91 and an average monthly balance of $155.71. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $37.58, which is 20 percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must

allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**State Court Background**

A review of Missouri Case.net[1] indicates that on July 6, 2017, plaintiff was charged by criminal complaint with felony driving while intoxicated, three counts of involuntary manslaughter in the first degree and felony leaving the scene of a motor vehicle accident. *See State v. Johnson*, No. 17DU-CR00941 (35th Jud. Cir., Dunklin County Court).[2]

The probable cause statement completed by Trooper T. Watson, with the Missouri State Highway Patrol, on July 5, 2017, stated as follows:

> On July 4, 2017, at 2217 hours, I arrived on the scene of a motor vehicle crash on Route MM, north of Dunklin County Road 102. When I arrived, I observed a black Chrysler Town and Country van on the northbound shoulder and a white 2015 Chevrolet Cruz sitting on the same shoulder behind it. Both vehicles were damaged. Another vehicle involved that left the scene of the crash was a black 2010 GMC Sierra. The GMC was located approximately a quarter of a mile north of the crash scene and was stuck in a muddy field. The driver of the GMC Sierra was Benny Johnson, who was traveling north, struck the Chevrolet Cruz, and killed one of its occupants, J.S.V. DOB 07/04/2015. Johnson continued north and struck and killed 2 pedestrians T.D.S. DOB 12/13/1984 and P.S.S. DOB 03/28/2007. The Chrysler Van was struck by debris set in motion by Johnson's vehicle. Johnson continued driving north, traveled around a right hand curve and as he began traveling around a left hand curve, he traveled off the right side of the roadway, into an open field and became stuck in the mud. Johnson was detained and brought back to the scene by a Dunklin County Deputy.

---

[1]Plaintiff's underlying state court cases were reviewed on Case.net, Missouri's online case management system. The Court takes judicial notice of these public state records. *See Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420 F.3d 757, 760 n. 2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records").

[2]Plaintiff was arrested on July 5, 2017, at Dexter Hospital. No bond was allowed.

> I made contact with Johnson and could smell a strong odor of intoxicants coming from him. Johnson's eyes were bloodshot and glassy and his speech was slurred. I asked Johnson if he would take a portable breath test and he refused. I submitted Johnson to field sobriety tests. The Horizontal Gaze Nystagmus test revealed a lack of smooth pursuit, an onset prior to 45 degrees and distinct nystagmus at maximum deviation in both eyes. Johnson's eyes also revealed vertical nystagmus. During the One-Leg-Stand test, Johnson swayed while balancing, using his arms for balance, hopped and put his right foot down. Johnson could not maintain a heel to toe stance while listening to the instruction to the Walk and Turn test. During the test, Johnson stopped while walking to steady himself did not touch heel to toe, lost his balance while walking, and used his arms for balance. Johnson stated he obtained a college bachelor's degree, but could not recite the alphabet correctly. Johnson also could not count backwards from 99 to 77 correctly. Johnson was obviously intoxicated. I arrested Johnson for Driving While Intoxicated and read him the Missouri Implied Consent law, which he stated he understood but refused to give a blood sample.

An Information was filed on July 11, 2017, charging plaintiff with the same charge as that in the criminal complaint. *See State v. Johnson*, No. 17DU-CR00941-01 (35th Jud. Cir., Dunklin County Court). Plaintiff was also charged as a habitual offender.

The matter was transferred to Stoddard County on or about April 19, 2019. *See State v. Johnson*, No. 17DU-CR00941-04 (35th Jud. Cir., Stoddard County Court). A Substitute Information was filed on October 8, 2021, by prosecutor Nicholas Jain, charging plaintiff with three counts of felony driving while intoxicated and causing the death of another, leaving the scene of an accident and causing physical injury to another and leaving the scene of an accident and causing property damage exceeding $1,000. *Id.* Plaintiff was represented by attorney John McMullan.

After a three-day jury trial on the matter in front of Judge Joe Satterfield, from October 18, 2021, through October 20, 2021, plaintiff was found guilty on all charges and he was sentenced on December 15, 2021, to a total term of imprisonment of thirty-eight (38) years in the Missouri Department of Corrections. *See State v. Johnson, No.* 17DU-CR00941-04 (35th Jud. Cir., Stoddard County Court).

Plaintiff appealed his conviction to the Missouri Court of Appeals, and the sentence was affirmed on August 4, 2023. *See State v. Johnson,* No. SD37373 (Mo.Ct.App. 2023). Plaintiff filed a post-conviction motion to vacate his conviction pursuant to Missouri Rule 29.15 on May 12, 2023. *See Johnson v. State*, No. 22SD-CC00020 (35th Jud. Cir., Dunklin County Court). The matter is currently under advisement.

**The Complaint**

Plaintiff Benny Johnson, an inmate at ERDCC, is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983 against twenty-four (24) defendants: (1) Joe Satterfield (Judge); (2) Robert Mayer (Judge); (3) John Speilman (Judge); (4) Nicholas Jail (Prosecutor); (5) Russell Oliver (Prosecutor); (6) Tim Pulley (Police Officer); (7) Jeremy Jones (Criminalist); (8) Todd Watson (Police Officer); (9) Aaron Grainger (Police Officer); (10) Josh Roberts (City of Bernie Police Officer); (11) John McMullan (Plaintiff's Criminal Attorney); (12) James Smith[3]; (13) Justin Claibourn (Prosecution Witness); (14) Nicole Green (Dunklin County Jail Administrator); (15) Ashley Graham (Nurse, Dunklin County Jail); (16) Dewayne Rhody (Medical Lab Technician); (17) Kelli Asher (Juror); (18) June Robinson (Prosecution Witness); (19) Tayhlar Santana (Prosecution Witness); (20) Brant Bristow (Prosecution Witness); (21) Jesse Curtis (Prosecution Witness); (22) Brian Wicker (Tow Truck Driver); (23) Bob Holder (Sheriff, Dunklin County); and (24) Carl Heifner (Sheriff, Stoddard County). [ECF No. 1]. Plaintiff is pursuing claims for "corruption" and "cruel and unusual punishment," as well as alleged violations

[3]Plaintiff states that defendant James Smith is with the Missouri Courts Commission on Retirement, Discipline and Removal.

of his Eighth and Fourteenth Amendment rights.[4] *Id*. Plaintiff is additionally pursuing claims under the Missouri State Constitution.

Plaintiff's claims in this action are conclusory and lack factual support. Additionally, he has attempted to assert multiple claims against multiple defendants in direct contravention of the Federal joinder rules. *See* Fed. R. Civ. P. 18 and 20. Nevertheless, the Court will do its best to recount plaintiff's claims for relief in this matter.

Plaintiff allegations in his complaint appear to relate to four issues: (1) purported civil rights violations relating to his arrest in July of 2017; (2) purported civil rights violations relating to his criminal prosecution in Dunklin and Stoddard County Courts between July of 2017 and October 2021; (3) claimed civil rights violations relating to his incarceration in both the Dunklin County and the Stoddard County Jails; (4) and purported allegations of deliberate indifference to his serious medical needs during his incarceration at both the Dunklin County and Stoddard County Jails.

**A. Allegations Relating to Plaintiff's Arrest in July of 2017**

Plaintiff states that at the scene of the accident in July of 2017, he was questioned prior to receiving his *Miranda* rights, by Missouri State Police Trooper Todd Watson and Officer Josh Roberts from the City of Bernie, Missouri.[5] Plaintiff complains that Officer Roberts acted outside his jurisdiction, while Trooper Watson disoriented him by moving him from vehicle to vehicle after the accident prior to both questioning him and then performing a field sobriety test on him.

---

[4]Plaintiff additionally claims that he is pursuing violations of his First and Sixth Amendment rights. However, he has not provided indications of what those claims are in his complaint.

[5]Plaintiff admits that Judge Satterfield reviewed this issue in his criminal action, as well as whether he had been legally under arrest prior to speaking to officers at the scene of the accident.

Plaintiff states that "all this movement without regard to my injuries or how much more damage he could have caused with all this movement" violated his Constitutional rights.

Plaintiff states that even though he was purportedly arrested at the scene of the accident, he was again arrested by an unnamed person at the hospital where he was taken for treatment and bloodwork. He claims he was physically and verbally abused by an unnamed Missouri State Police Trooper at the hospital when he was placed in handcuffs. He was allegedly "yanked around extremely hard, nearly causing [him] to fall."[6] Plaintiff believes that this unnamed officer was prejudiced against him, and he purportedly told plaintiff that he hoped he never saw a free day again. Plaintiff claims that this "abusive Trooper" transported him from the hospital to the "Dunklin/Stoddard County line" and to the custody of Trooper Watson who then took him to the Dunklin County Jail. Plaintiff complains that Trooper Watson questioned him during the drive to the Jail. Plaintiff claims Trooper Watson took him to the booking area at Dunklin County Jail and again read him his rights. Plaintiff complains that Trooper Watson tried to make it seem like he was first arrested at the scene of the accident, then at the hospital, but he was really arrested at the Dunklin County Jail. As noted above, this matter was determined during plaintiff's criminal action.

Plaintiff states that unnamed persons allowed Dexter City Police officers into the emergency room after the accident, even though Dexter City Police officers were not involved with his criminal investigation. Plaintiff believes that this was a violation of his HIPAA rights.[7]

Plaintiff states that an unnamed accident investigator took pictures of his arms after the accident without getting a warrant. He asserts that this investigator also asked him if he had

---

[6]To the extent plaintiff believes he was subject to excessive force, he would need to bring a separate lawsuit against a named defendant. The Court will not address the supposed excessive force allegations in the present lawsuit given that plaintiff has not identified a proper defendant in this matter.

[7]Courts have repeatedly held that an allegation violation of HIPAA does not create a private right of action. *See Adams v. Eureka Fire Prot. Dist.,* 352 F.App'x 137, 138-39 (8th Cir. 2009).

anything in his pockets, and when plaintiff took his truck keys out of his pockets, the investigator took the keys prior to reading him his rights.

Plaintiff complains that City of Bernie Police Officer, Josh Roberts, let Brant Bristow leave the scene of the accident and "swap vehicles." Plaintiff believes Mr. Bristow should not have been able to leave the scene. Plaintiff has not indicated the relevance of this issue.

Plaintiff objects to an unnamed officer with the Missouri State Police who allegedly released his truck to the insurance company before his attorney, John McMullan, could review it. He asserts that as a result, Brian Wicker, a tow truck driver, disconnected the battery on the truck which allegedly reset the computer. This caused data that was used at trial to be, according to plaintiff, "questionable." Plaintiff also objects to the data used from the truck because he states that his truck keys were taken by the police without his consent.[8]

### B. Allegations Relating to Plaintiff's Criminal Prosecution in Dunklin and Stoddard County Courts Between July of 2017 and October 2021

Plaintiff disagrees with several pretrial decisions made by Judges Joe Satterfield, Robert Mayer and John Speilman in his criminal action.[9] He states that his initial appearance was in front of Judge Speilman, who bound his case over in front of Judge Mayer. Plaintiff requested a change of venue in his criminal action to Butler County, Missouri, and Judge Mayer denied the motion. Instead, the matter was moved to Stoddard County, Missouri, but not until April of 2019. Plaintiff

[8]Evidentiary matters would have been reviewed during plaintiff's criminal action. As plaintiff was convicted and sentenced in his criminal case, he cannot now attack that conviction unless it has been expunged. *See* discussion of *Heck v. Humphrey, infra.*

[9]Plaintiff claims he wrote a letter to the Missouri Courts Commission on Retirement, Discipline and Removal relative to all the judges involved in his criminal case on June 23, 2021. James Smith, an individual at that office, wrote back to plaintiff on July 8, 2021, but only relative to his complaint against Judge Satterfield. Smith told plaintiff there was no legal basis to proceed on his complaint. Plaintiff wrote to Smith to ask if his complaint was shared with Judge Satterfield. Smith responded that "any correspondence about [his] complaint were private and denied to [him]." Plaintiff has not indicated what type of civil violation he believes Smith is liable for.

objects to the change of venue, as well as the change of judge which occurred at the time. His case was then assigned to Judge Joe Satterfield, who plaintiff claims was a friend of Judge Mayer.

Plaintiff states that prior to the case being transferred to Stoddard County, his attorney, John McMullan, and the Prosecutor Unknown McCormick, reached of plea deal of ten (10) years imprisonment. However, Judge Mayer declined to approve the deal, stating that he wanted the incoming prosecutor, Nicholas Jain, to hear and try plaintiff's case. Plaintiff believes that Judge Mayer and Nicholas Jain have a corrupt relationship. He points to the fact that Judge Mayer and Prosecutor Jain have adjacent offices in the Dunklin County Courthouse as evidence of this relationship.

Plaintiff also claims to have additional evidence of "corruption," including the fact that Prosecutor Nicholas Jain wanted to enhance the charges against him, so Judge Mayer sent plaintiff's case back to Judge Speilman. Plaintiff believes that because Judge Speilman issued the warrant for the blood draw in his initial case, as well as the warrant for his arrest, he should have had to recuse himself from presiding over the motion to enhance the charges.

Plaintiff complains that Judge Satterfield showed bias by denying almost all his pretrial motions. He also asserts that he showed bias by allowing Stoddard County Prosecutor Russell Oliver, who was not prosecuting the case against plaintiff, to sit in the courtroom during plaintiff's trial. Plaintiff states that Oliver sat in a witness box next to Judge Satterfield. Plaintiff also believes Oliver consulted with Prosecutor Jain during plaintiff's trial. Furthermore, plaintiff accuses Oliver, Jain and Judge Satterfield of loading the jury pool with persons that had previously been on juries who had found criminals guilty and/or who had children who went to school with Trooper Tim Pulley's children. Plaintiff does not indicate how Tim Pulley is connected to his case. He has not indicated that Pulley was at the scene of the accident or that Pulley was involved in his arrest.

Plaintiff argues that Judge Satterfield acted in a corrupt manner when he called plaintiff's sister and brother-in-law into his office prior to the trial and told them what they were able to testify to on the stand. He claims that they were threatened with jail time if they said something either Judge Satterfield or Prosecutor Jain disagreed with, and his sister was never able to testify. Plaintiff asserts that his attorney, John McMullan, failed to object to Judge Satterfield's inappropriate conduct.

Plaintiff believes that Judge Satterfield and Prosecutor Jain had too close a working relationship. He complains that Prosecutor Jain was allowed to use leading questions with his witnesses while plaintiff's witnesses were not allowed the use of leading questions. Plaintiff also complains that Prosecutor Jain enhanced the Victim Impact Statements to influence the jury. Plaintiff also asserts that Judge Satterfield allowed the prosecution witnesses to change their stories from the testimony given in their depositions. Plaintiff has not provided examples of this in his complaint. His allegations are entirely conclusory.

Plaintiff accuses Trooper Tim Pulley of having an improper conversation with one of the jurors in his criminal trial, Kelli Asher. He says that Judge Satterfield denied his requests for a mistrial. Plaintiff does not indicate what he believes Pulley was discussing with Kelli Asher. Plaintiff accuses Pulley of having free reign during trial, stating that Judge Satterfield allowed him to speak directly to jurors when he was on the stand during trial. Plaintiff fails to state what Pulley testified to at trial. Plaintiff accuses a victim's family member in this case, Justin Claibourn, of speaking to jurors about how much he loved his ex-wife. Plaintiff states that Claibourn should have known that this practice was forbidden during a trial.

Plaintiff asserts that during his trial, Judge Mayer was present at the Stoddard County Courthouse and seen coming out of the jury room while jurors were present. He also claims that

Judge Mayer was seen going back and forth to Judge Satterfield's office during trial breaks. Plaintiff believes Judge Mayer should have been kept from speaking to Judge Satterfield about his trial.

Plaintiff states that Prosecutor Jain asked Judge Satterfield for time to investigate whether plaintiff had prior DUIs before he was sentenced. This allegedly caused a delay in sentencing of two months. He further objects to Judge Satterfield's remarks at sentencing stating that plaintiff had shown no remorse for the families of those he had killed.

Plaintiff alleges that Prosecutor Nicholas Jain was somehow biased and corrupt because at the same time as he was prosecuting him in his criminal case, Jain was defending himself on a Driving While Intoxicated (DWI) charge. Plaintiff believes Jain should not have been able to prosecute him while undergoing his own criminal proceeding.

Plaintiff accuses medical lab technician Dewayne Rhody of improperly testifying at trial to topics outside of his personal knowledge. He claims that he should not have testified that he drew both of plaintiff's blood samples because a female staff member at the hospital drew plaintiff's first blood sample. Similarly, plaintiff claims that Jeremy Jones, the crime lab supervisor, should not have been able to say with certainty at trial that the blood samples were his.

Plaintiff makes a plethora of complaints about his own attorney, John McMullan. He asserts that he wanted his attorney to motion for speedy trial, but he failed to do so. He states that McMullan failed to object at trial because he was afraid of harassment, was afraid of looking bad, did not believe plaintiff was paying him enough money, and thought plaintiff was guilty. Plaintiff also complains that he wanted to terminate McMullan's appointment but was told he would not be given appointed counsel if he did so. Plaintiff alleges that McMullan failed to timely depose witnesses, and as a result, they changed their stories after speaking to Prosecutor Jain and

investigators who worked for the prosecutor. Plaintiff also objects to McMullan's failure to confront Judges Satterfield and Mayer with plaintiff's complaint to the Missouri Courts Commission on Retirement, Discipline and Removal.

**C. Allegations Relating to Alleged Civil Rights Violations at the Dunklin County and the Stoddard County Jails**

Plaintiff claims that when he was first incarcerated at Dunklin County Jail in July of 2017, he worked in the kitchen. He complains that he was made to work approximately sixteen (16) hour days without pay. He has failed to indicate, however, what exactly he did at the Dunklin County Jail, or how long he worked in the kitchen at the Jail. Plaintiff has also failed to indicate if he volunteered for the job in the kitchen, or if he received special treatment because of working at the Jail.

Plaintiff alleges that he was held with another inmate for several months in a one-man cell at the Dunklin County Jail. He complains that he had to sleep on a mat on the floor next to the toilet, even when his cellmate urinated on the floor next to him. He claims that when he asked for cleaning supplies to clean the floor, he was not provided the supplies right away. Plaintiff does not indicate how long it took to receive the cleaning supplies. However, from the facts in the complaint it appears that he received the supplies the next day.

Plaintiff also complains that he and other inmates suffered from spider bites at both the Dunklin County Jail and the Stoddard County Jail.[10] He asserts that the Stoddard County Jail was so crowded that often five inmates were in a two-man cell together. Additionally, there were not enough showers at Stoddard County Jail for everyone to use, so usually inmates were only allowed to shower approximately every four days. He asserts that showers at Stoddard County Jail had

[10]It is unclear from plaintiff's complaint plaintiff's dates of incarceration at the Dunklin County Jail and/or the Stoddard County Jail.

mold on the ceiling. Furthermore, at Dunklin County Jail, the shower curtains and ceilings were rarely cleaned, and some walls had mold on them. Plaintiff complains that he was held in a cell at Stoddard County Jail for forty-eight (48) hours that utilized a hole in the floor for a toilet.

Plaintiff also states that inmates at the Dunklin County Jail were charged for toiletries once per week. However, on occasion, cell searches occurred at the Jail and extra toiletries were taken from the cells and sold to other inmates at the Jail. The amounts paid for toiletries were not refunded to the inmates' accounts. He asserts that Stoddard County Jail did not provide inmates with any hygiene products, so if an inmate had no money in his account, he could not utilize cleaning products.

Plaintiff asserts that nurse Ashley Graham, the nurse in Dunklin County, stole commissary items from his cell on the date of one of the cell searches, including items such as bags of chips, peanut butter snack crackers and cookies. His requests for reimbursement were denied. Plaintiff claims that Graham, as well as janitor Orville Sipes, made comments about his criminal case at Dunklin County Jail in front of other inmates.

Plaintiff objects to inmate phone calls and visiting rooms being recorded at the Dunklin County and Stoddard County Jails. He believes that this allows judges and prosecutors access to inmate conversations.

### D. Plaintiff's Allegations of Deliberate Indifference to his Serious Medical Needs at both Dunklin County and Stoddard County Jails

Plaintiff makes the general allegation that he was denied proper medical treatment when he was incarcerated at Dunklin County Jail. However, plaintiff has failed to identify what his serious medical needs were during his time at both Jails.

He claims that when he arrived at the Dunklin County Jail, he had wounds on his arms that were "subject to bleeding," which appear to relate to having IVs removed at the hospital in July of 2017. He states that he was denied "clean bandages" for the wounds by nurse Ashley Graham.

He states that on an unnamed occasion, Graham failed to provide him a comparable medication at Dunklin County Jail when a medication he was taking was "pulled from the market." Instead, he was given an over-the-counter medication. And on another occasion, when he fell at the Dunklin County Jail on a puddle of water and allegedly hurt his shoulder, Graham placed him under observation for twenty-four (24) hours to see if he was faking his injury before transferring him to the Emergency Room in Hayti, Missouri. Plaintiff complains that he was billed by the hospital for his treatment, and that he was also billed by Dunklin County Jail for medical care when he saw the doctor at the Jail for treatment.

On an unidentified date, plaintiff claims he got sick at the Dunklin County Jail with a fever and chills. He claims an unnamed guard told him she spoke to a physician on the phone and came back with an antibiotic for him to take. A few days later, plaintiff developed a rash on his hands and feet, and the same guard again allegedly spoke to a physician and told plaintiff to take Benadryl. Plaintiff states that he is unsure if he was being treated by an actual physician or simply nurse Ashley Graham or a guard at the Dunklin County Jail.

Plaintiff states that he once filled out a medical request for an unnamed medical issue while he was at the Dunklin County Jail, but it was almost three months until he was seen by a doctor. Plaintiff fails to detail what his medical need was when he filled out the medical request.

Plaintiff complains that his sister had to both purchase and drive his psoriasis medication to both the Dunklin County Jail and the Stoddard Count Jail. He also complains that he was made to pay for his medications that he took while he was incarcerated at both Jails.

**E. Plaintiff Fails to Make Allegations Against the Remaining Defendants**

Plaintiff fails to set forth specific facts alleging civil rights violations against the following defendants: (1) Aaron Grainger; (2) James Smith; (3) Justin Claibourn; (4) Nicole Green; (5) Kelli Asher; (6) June Robinson; (7) Tayhlar Santana; (8) Brant Bristow; (9) Jesse Curtis; (10) Brian Wicker; (11) Bob Holder; and (12) Carl Heifner.

Several of the aforementioned defendants – Grainger, Smith, Green, Robinson, Curtis, Holder and Heifner - have no allegations made against them in plaintiff's complaint. Whereas other defendants – Claibourn, Asher, Santana, Bristow and Wicker – were not acting as state actors as described by plaintiff, in the events in the complaint and as such, cannot be held liable under 42 U.S.C. § 1983.

For relief in this action, plaintiff seeks damages.

**Severance of Plaintiff's Purported Unlawful Conditions of Confinement Claims and Deliberate Indifference to Serious Medical Needs Claims**

As set forth above, plaintiff alleges an abundance of claims in this lawsuit, most of which are unrelated. "Unrelated claims against different defendants belong in different suits, ... [in part] to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Complaints with unrelated claims brought by prisoner plaintiffs against different defendants should be rejected, either by severing the action into separate lawsuits or by dismissing improperly joined defendants. *Id.; see also* Fed. R. Civ. P. 21; *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844-45 (3rd Cir. 2006); *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000); *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988).

Federal Rule of Civil Procedure 21 permits severance of claims if they are improperly joined. The rule states, in pertinent part, that on motion or sua sponte, "the court may at any time, on just terms ... sever any claim against a party." Fed. R. Civ. P. 21. Severance is appropriate when the claims are "discrete and separate," each capable of resolution without dependence or effect on the other. *See Gaffney v. Riverboat Servs. of Ind., Inc.,* 451 F.3d 424, 442 (7th Cir. 2006) (citations omitted).

When determining whether to sever claims pursuant to Rule 21, district courts often consider (1) whether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof; (2) whether severance would promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence. *See Official Comm. of Unsecured Creditors v. Shapiro,* 190 F.R.D. 352, 355 (E.D. Pa. 2000) (citation omitted).

Plaintiff's allegations relating to his purported unlawful conditions of confinement claims at both the Dunklin and Stoddard County Jails, as well as his deliberate indifference to his serious medical needs claims at the Jails are not based on the same transactions or occurrences as the rest of the claims in this lawsuit. For this reason, the Court will sever and dismiss these claims, without prejudice. If plaintiff wishes to file new actions concerning those claims he may do so. However, plaintiff must remember that his claims relating to Dunklin County Jail are separate and distinct from those relating to Stoddard County Jail. Moreover, his deliberate indifference to medical care claims are also separate and distinct from his conditions of confinement claims, as they relate to different defendants and different dates. *See* Fed. R. Civ. P. 18 and 20. Accordingly, these claims would need to be filed in separate lawsuits.

## Discussion

A review of plaintiff's allegations indicates that his remaining claims against defendants are subject to dismissal. Plaintiff's claims relating to events which occurred prior to October 17, 2019, are time-barred, and the Court need not address those claims as a result. Plaintiff's resultant claims, which are brought against defendants in their official capacities only, fail to state a claim upon which relief may be granted. Additionally, to the extent plaintiff is attacking his state court criminal conviction, his claims are barred by *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994), as there is no indication that his conviction has been overturned.

To the extent plaintiff is asserting claims for relief against the judges who presided over his criminal case, as well as prosecutor Nicholas Jain and/or Prosecutor Russell Oliver, those claims are barred by judicial and prosecutorial immunity. Plaintiff's claims against his defense counsel, John McMullan are also subject to dismissal.

### A. Plaintiff's Allegations Relating to Events Which Occurred Prior to October 17, 2019, Are Time-Barred

While there is no statute of limitations contained within 42 U.S.C. § 1983, the Supreme Court "has held that § 1983 claims accruing within a particular state should be governed by that state's statute of limitations governing personal-injury claims." *Walker v. Barrett*, 650 F.3d 1198, 1205 (8th Cir. 2011). *See also Anderson v. City of Minneapolis*, 934 F.3d 876, 880 (8th Cir. 2019) (determining that statute of limitations for § 1983 case arising in Minnesota "comes from the state's personal injury statute"). Thus, for cases arising in Missouri, the five-year statute of limitations for personal injury actions found in Mo. Rev. Stat. § 516.120(4) applies to § 1983 actions. *Sulik v. Taney Cty., Mo.,* 393 F.3d 765, 767 (8th Cir. 2005). While the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint

under 28 U.S.C. § 1915 when it is apparent the statute of limitations has expired. *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992).

Plaintiff did not sign and date the instant complaint, nor did he indicate when he placed the complaint in the prison mail system at ERDCC. Plaintiff's motion to proceed in forma pauperis is signed and dated October 17, 2024, and the Court received plaintiff's complaint on that date. Accordingly, any claims brought by plaintiff arising five (5) years prior to this date, or before October 17, 2019, are time-barred.

Because plaintiff has failed to articulate in his complaint when the majority of his claims arose, the Court cannot state with certainty which of the claims are time-barred. However, it is clear that many of the claims in this action arose prior to October 17, 2019, or five years prior to the filing of the present lawsuit. For example, the claims relating to plaintiff's arrest arose in July of 2017, as did many of his state pretrial criminal matters, which occurred prior to October of 2019. These claims are subject to dismissal as time-barred.

**B. Plaintiff's Claims Attacking his Criminal Conviction Are Barred by *Heck v. Humphrey***

The Supreme Court has held that a prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his convictions, sentences, or continued imprisonment unless the convictions or sentences have been reversed, expunged, or called into question by issuance of a writ of habeas corpus. *Heck,* 512 U.S. at 486-87; *Schafer v. Moore,* 46 F.3d 43, 45 (8th Cir. 1995); *see also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying rule in § 1983 suit seeking declaratory relief).

To the extent that plaintiff seeks a ruling that his state court sentence is invalid, and he should be released, such a § 1983 claim is not cognizable here. Plaintiff seems to be asserting that the allegedly unconstitutional acts of several of the defendants led to his conviction. Plaintiff does

not aver, nor does it appear, that his conviction or sentence has been reversed, expunged, or called into question by the issuance of a writ of habeas corpus. Therefore, the Court concludes that plaintiff's claims attacking his criminal conviction are barred by *Heck v. Humphrey.*

### C. Plaintiff's Claims Against Defendants in their Official Capacities Are Subject to Dismissal

Even if most of plaintiff's claims were not time-barred, they would be subject to dismissal. For example, many of plaintiff's claims are against county or municipal employees. Because plaintiff failed to specify the capacity in which he sues the county or municipal employees, the Court interprets the complaint as including only official capacity claims against those defendants. *See Egerdahl v. Hibbing Community College,* 72 F.3d 615, 619 (8th Cir. 1995) ("If a plaintiff's complaint is silent about the capacity in which [he] is suing the defendant, [courts] interpret the complaint as including only official-capacity claims.").

A suit brought against a government official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, an official-capacity suit generally represents a "way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In this case, plaintiff brings claims against Dunklin County employees as well as Stoddard County employees. As such, plaintiff's official capacity claims against these defendants must be treated as claims against the governmental entities that employ them, Dunklin County and Stoddard County.[11]

---

[11]Plaintiff also brings claims against employees of the State of Missouri. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008).

In *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), the Supreme Court held that a municipality or local governing body can be directly liable under § 1983. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cnty*., 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

Plaintiff fails to make any assertions against either Dunklin County or Stoddard County in his complaint, and no allegations that could be construed as *Monell* claims. There are no claims of a constitutional violation by either Dunklin County or Stoddard County resulting from any policy, custom, or deliberately indifferent failure to train or supervise. *See Monell*, 436 U.S. at 690–92 (describing a municipal liability claim). Merely listing a defendant's name in a case caption is insufficient to support a claim against the defendant. *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (per curiam) (noting that court properly dismissed pro se complaint that was silent as to defendant except for his name appearing in the caption)). As such, plaintiff's official-capacity claims against defendant police officers fail to state a claim for relief and must be dismissed under 28 U.S.C. § 1915(e)(2)(B).

Furthermore, to the extent plaintiff is attempting to pursue claims against either the Dunklin County Jail and/or the Stoddard County Jail, such claims are also subject to dismissal. Municipal departments like jails, sheriff's offices and police departments are not legal entities that can be sued under 42 U.S.C. § 1983. *See Ketchum v. City of W. Memphis*, 974 F.2d 81, 82 (8th Cir. 1992). Accordingly, plaintiff cannot sustain a claim against these entities.

---

However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will,* 491 U.S. at 71. Thus, plaintiff's claims against the State employees are subject to dismissal.

**D. Plaintiff's Failure to Make Allegations Against Several of the Defendants is Fatal to His Claims for Relief Against these Defendants.**

Liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights); and *Love v. Schoffman*, 142 Fed. Appx. 278, 279 (8th Cir. 2003) (affirming pre-service dismissal under 28 U.S.C. § 1915 because the complaint, among other infirmities, "did not specify which of the many named defendants was responsible for each of the alleged harms"). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

As noted above, plaintiff fails to make specific allegations against several defendants in this action including: Grainger, Smith, Green, Robinson, Curtis, Holder and Heifner. Similarly, other defendants – Claibourn, Asher, Santana, Bristow and Wicker – were not acting as state actors as described by plaintiff in the events in the complaint, and as such, cannot be held liable under 42 U.S.C. § 1983.

**E. Plaintiff's Allegations Against Judges Satterfield, Mayer and Speilman, as well as Prosecutors Nicholas Jain and Russell Oliver, Fail to State a Claim.**

Plaintiff's conclusory allegations against Judges Satterfield, Mayer and Speilman for allegedly acting biased and corrupt, are subject to dismissal, as judges are entitled to judicial immunity.

Judicial immunity provides judges with immunity from suit, allowing them to exercise the authority with which they are vested, and to act upon their own convictions. *See Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 925 (8th Cir. 2020). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This immunity applies even when the judge is accused of acting maliciously or corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) (stating that "judicial immunity is not overcome by allegations of bad faith or malice"). Moreover, "a judge will not be deprived of his immunity because the action he took was in error or was in excess of his authority." *Justice Network, Inc. v. Craighead Cty.,* 931 F.3d 753, 760 (8th Cir. 2019). As such, plaintiff's allegations against Judges Satterfield, Mayer and Speilman are subject to dismissal.

Similarly, plaintiff's allegations against Prosecutor Nicholas Jain and Prosecutor Russell Oliver are also subject to dismissal. Prosecutors are absolutely immune from civil rights claims based on actions taken within the scope of their duties in initiating a criminal prosecution and presenting the state's case at trial. *Imbler v. Pachtman,* 424 U.S. 409, 430–31 (1976). "Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). *See Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (same).

In this case, plaintiff has not made specific claims of bias or corruption relating to Prosecutors Jain or Oliver. His claims are merely speculative and conclusory. A prosecutor is immune from suit even if he knowingly presents false, misleading, or perjured testimony, or withholds or suppresses exculpatory evidence, and plaintiff has not alleged that Jain went so far as to do so in this case. *Reasonover v. St. Louis County, Mo.,* 447 F.3d 569, 580 (8th Cir. 2006). Accordingly, plaintiff's allegations against Jain and Oliver are subject to dismissal.

**F. Plaintiff's Claims Against his Criminal Attorney Are Subject to Dismissal.**

Plaintiff accuses his criminal attorney, John McMullan, of failing to properly represent him in his prior criminal action. Because plaintiff's defense attorney did not act under of color of state law, he cannot be liable for any violation of plaintiff's constitutional rights under § 1983.

"The essential elements of a [42 U.S.C.] § 1983 claim are: (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Green v. Byrd*, 972 F.3d 997, 1000 (8th Cir. 2020). However, a defense attorney, whether appointed or retained, does not act under color of state law, and thus cannot be liable for the alleged deprivation of constitutional rights under 42 U.S.C. § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (stating that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Myers,* 960 F.2d at 750 (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"). For the aforementioned reasons, plaintiff's allegations against John McMullan are subject to dismissal.

**Conclusion**

Having thoroughly reviewed and liberally construed the complaint and the supplemental documents, the Court concludes that it is subject to dismissal because it is frivolous and/or fails to state a claim upon which relief may be granted. The Court can envision no amendment to the complaint that would cause it to state a plausible claim for relief. The Court will therefore dismiss this action at this time, without prejudice, and will decline to exercise supplemental jurisdiction over plaintiff's state law claims, such as those he wishes to bring under the Missouri Constitution and/or any Missouri State law. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S 715, 726 (1966) (if federal claims are dismissed before trial, remaining state claims should also be dismissed); *Crest Construction II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (where all federal claims have been dismissed, district court's decision to decline supplemental jurisdiction over state claims is "purely discretionary").

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion seeking leave to commence this action without prepaying fees or costs [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that, within twenty-one (21) days of the date of this order, Plaintiff must pay an initial filing fee of $37.58. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's claims of unlawful conditions of confinement and deliberate indifference to his serious medical needs are **SEVERED AND DISMISSED** without prejudice. *See* Fed. R. Civ. P. 21.

**IT IS FURTHER ORDERED** that all remaining federal claims in this action are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that any state law claims brought by plaintiff in this action are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1367(c).

A separate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 22nd day of November, 2024.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| BENNY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. 1:24-CV-00194 SPM |
| | ) | |
| JOE Z. SATTERFIELD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER OF DISMISSAL**

**IT IS HEREBY ORDERED** that plaintiff's claims of unlawful conditions of confinement and deliberate indifference to his serious medical needs are **SEVERED AND DISMISSED** without prejudice. *See* Fed. R. Civ. P. 21.

**IT IS FURTHER ORDERED** that all remaining federal claims in this action are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that any state law claims brought by plaintiff in this action are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1367(c).

**IT IS HEREBY CERTIFIED** that an appeal from this action would not be taken in good faith.

Dated this 22nd day of November, 2024.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BENNY JOHNSON,<br>Plaintiff(s),<br>v.<br>JOE Z. SATTERFIELD, et al.,<br>Defendant(s). | No. 1:24-CV-00194-SPM |

**NOTICE OF APPEAL**

Notice is hereby given that Benny Johnson, appeal(s) to the United States Court of Appeals for the Eighth Circuit from the final judgment entered in this action on the 27th day of Nov., 2024.

Signed this 27th day of Nov., 20 24.

Benny Johnson

(Signature of plaintiff(s))

RECEIVED
FEB 12 2025
BY MAIL

1/15/2025

Dear Sirs;

I am again writing in regards to case number 1:24-CV-00194-SPM. I refiled all the enclosed information electronically on 01/14/2025 at approximately 7:50 PM. This was due to the fact that according to the response that I received on 01/14/2025, you have not received my prior electronic filings. I am also send all this information via the U.S. Postal Service due to this recent information. I will be awaiting your prompt response.

Respectfully Submitted,
Benny Johnson
01/15/2025

Benny Johnson
DOC# 1368576
HU #3D-111
ERDCC
2727 Hwy. K
Bonne Terre, MO 63628

1/8/2025

Dear Sirs;

I am writing in regards to case number 1:24-cv-00194-SPM. On 01/07/2025 I received your response dated 01/03/2025, in regards to my request for information on this case/appeal.

Again, I electronically filed a notice of appeal, motion to proceed in forma pauperis on appeal and affidavit in support - prisoner cases along with supporting documentation and motion to amend Plaintiff's petition. I also included my amended petition, attachment of evidence, and attachment of witnesses. This was electronically filed on 12/05/2024, which was within the 14 day appeal period. I resent these documents again on 12/30/2024, due to the lack of response or confirmation of receipt.

I am once again resending this documentation based on your response, and am asking that you honor my appeal, as it was filed in a timely manner and amended to the correct format.

Sincerely Yours,
Benny Johnson
01/08/2025

Benny Johnson
DOC# 1368576
HU# 3A-117
ERDCC
2727 Hwy. K
Bonne Terre, MO
63628

**From:** DOC.ERDCC Eastern District EFile Account
**Sent:** Friday, January 3, 2025 2:27 PM
**To:** DOC.EfileERDCC
**Subject:** FW: Activity in Case 1:24-cv-00194-SPM Johnson v. Satterfield et al Request

**Follow Up Flag:** Follow-up
**Flag Status:** Flagged

---

**From:** Moed_AutoSend@moed.uscourts.gov <Moed_AutoSend@moed.uscourts.gov>
**Sent:** Friday, January 3, 2025 8:25:50 PM (UTC+00:00) Monrovia, Reykjavik
**To:** MOED_ECF_Notification@moed.uscourts.gov <MOED_ECF_Notification@moed.uscourts.gov>
**Subject:** Activity in Case 1:24-cv-00194-SPM Johnson v. Satterfield et al Request

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Eastern District of Missouri**

## Notice of Electronic Filing

The following transaction was entered on 1/3/2025 at 2:25 PM CST and filed on 12/30/2024

**Case Name:** Johnson v. Satterfield et al
**Case Number:** 1:24-cv-00194-SPM
**Filer:** Benny Johnson
**WARNING: CASE CLOSED on 11/22/2024**
**Document Number:** 9

**Docket Text:**
**Request for status of appeal by Plaintiff Benny Johnson. NOTE: Copy of 12/09/2024 filing and current docket sheet mailed to Benny Johnson. No appeal of record to date in this case. (CMH)**

**1:24-cv-00194-SPM Notice has been electronically mailed to:**

**1:24-cv-00194-SPM Notice has been delivered by other means to:**

Benny Johnson
1368576
ERDCC

Eastern Reception Diagnostic and Correctional Center
2727 Highway K
Bonne Terre, MO 63628

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1037221849 [Date=1/3/2025] [FileNumber=11193195-0
] [6e6203583cf741f3140ab9cb135e9e99d6f1ce85cbb2d5480c415a2d2c162bbeb59
aaa871ec9674719ff70ded73e2dc02ad7fbe81c10d633b4df2ead45f6c002]]

RECEIVED

DEC 30 2024

BY MAIL

Dear Sirs; 12/22/24

I am writing in regards to my appeal of case number 1:24-cv-00194-SPM. I filed my appeal electronically on 12/05/24. I am wanting to confirm your receipt of this filing. I will greatly appreciate your confirmation of receipt. I will await your response.

Sincerely,
Benny Johnson

Benny Johnson #1368570
HU#3A-117
ERDCC
2727 Hwy. K
Bonne Terre, MO 63628

Benny Johnson #1368576
HU#3A-117
ERDCC
2727 Hwy. K
Bonne Terre, MO 63628

RECEIVED
DEC 30 2024
BY MAIL

SAINT LOUIS MO 630
23 DEC 2024 PM 4 L

FREEDOM
FOREVER USA

MAILED FROM
DEC 23 2024
EASTERN RECEPTION
DIAGNOSTIC & CORRECTIONAL
CENTER

U.S. District Court
Eastern District of Missouri
111 S. Tenth Street
St. Louis, MO
63102

63102-112894

Dear Sirs; 12/30/24

I have received no confirmation that you have received my appeal that I electronically filed on 12/05/24, at approximately 3:00 PM (CST). So, I am resending the documents again, which include my appeal, forma Pauperis, account printout, amended lawsuit, attachment of evidence, and attachment of witnesses. I will greatly appreciate confirmation of receipt of these documents in regards to Case# 1:24-cv-00194-SPM.

Respectfully Submitted,
Benny Johnson
12/30/24

Benny Johnson
DOC# 1368576
HU# 3A-117
ERDCC
2727 Hwy. K
Bonne Terre, MO 63628

U. S. Court of Appeals
Eastern District of Missouri

| | |
|---|---|
| Benny Johnson<br>Plaintiff<br><br>V.<br><br>State of Missouri, etal<br>Defendants | Case No. 1:24-cv-00194 SPM |

# Motion to Amend Plaintiffs Petition

Comes now before this Court is Benny Johnson, the Plaintiff with his motion to amend his petition and it's claims, herefore the Plaintiff states:

1. I, the Plaintiff, ask this Court to amend my petition and that the proper framework could greatly determine the outcome of this case. Plaintiff states that his claims will be clarified and that it could aid this Court, and prevent confusion and reduce arguements as this case progresses.

2. I, the Plaintiff, state to this Court and ask to amend the claims of Defendants, and that the official capacity must be presumed without confusion. The Court should refer to Johnson v. Outboard Marine Corp. 172F. 3d, 531, 535, 8th Cir 1999, Plaintiff will be entering in the Defendants, and claims against them that is valid for suit and will state case law supporting this amendment and Plaintiff asks this Court to grant and allow...

3. Plaintiff states to this Court that county jails and other Defendants listed in his original petition, are not legal entities amendable to suit. Plaintiff would like to amend his petition and asks the Court to grant this motion to amend and that this Court should see Owens v. Scott County Jail 328 F. 3d, 1026, 1027 8th Cir. 2003, and th...

by granting this Amendment of Plaintiff's Petition greatly help the outcome of this case, Court should see Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 690, 1978. And to prevail on this type of claim the Plaintiff must establish the govermental entity's "That is the liability for the alleged conduct." Plaintiff asks this Court to grant and allow his Amendment of his Petition.

4. Plaintiff will be attaching an other count and the Defendants and claims against them will be attached. Plaintiff asks this Court to see Heck also Savory "to innocence to seek relief under a 42 U.S.C. 1983 should not be time barred or claims dismissed. The Court should see Carr v. Louisville - Jefferson Cnty - 2022 U.S. App Lexis - 16662 - 6th Cir. 2022 ... and that justice will prevail and a showing of truth will be determined by the show of Plaintiff's claims on his petition. The Court should grant and allow... the Amendment of Plaintiff's Petition...

5. Plaintiff asks this Court to amend his petition of it's Defendants and the claims. Plaintiff will be attaching. Counties and cities, and to ensure a valid suit the Defendants will be entitled to suit and the claims against them. Plaintiff asks this Court to see Kelly v. City of Omaha, Neb, 813 F. 3d, 1070, 1075 8th Cir. 2016, citing - for such liability may attach if the Constitutional violation resulted from: 1. An official municipal policy, 2. An unofficial custom, 3. A deliberate indifferent failure to train or supervise. Plaintiff also asks this Court to refer to Mick v. Raines, 883 F. 3d, 1075-1079, 8th Cir., 2018, also Marsh v. Phelps County, 902 F. 3d, 745, 751, 8th Cir. 2018, recognizing claims challenging and unconstitutional policy or custom or those based on a theory of inadequate... Plaintiff asks this Court to grant and allow the Amend..

6. Plaintiff asks this Court to amend and allow this motion, and that Defendants and claims against judicial officials, judicial circuits, and that these Defendants and claims against them are valid for suit. Plaintiff asks this Court to see Case Kassa v. Fulton County Georgia, 40 F. 4th, 1289, 11th Cir., 2022, also Pierson v. Ray 386 U.S. 547, also Hart v. Hodges,

587 F. 3d, 1288, 11th Cir., 2009. Cases where absolute immunity was denied on failure to ensure material, witnesses, warrants, and professional Conduct, and that a 42 U.S.C. 1983 can be pursuant to an official of the courts and a judicial official, and the denials for immunity do exist within this Court... Plaintiff asks this Court to grant and allow his Amendment of his Petition.

7. Plaintiff asks this Court to grant and allow this Amendment of his Petition and that by allowing this Amendment of Petition, that it will give facial plausibility and that the Plaintiff will plead factual content and that this will allow the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged. Plaintiff asks the Court to see Ashcroft v. Iqbal, 556 U.S., 662-678, 2009, when determining whether a complaint states a plausible claim for relief - a specific task that requires the reviewing Court to draw upon judicial experience and common sense... The Court must assume the veracity of well pleaded facts - citing Twombly 550 U.S., 555, Courts should allow the Amendment of Plaintiffs Petition...

Wherefore Plaintiff asks this Court to grant and amend his petition, and any further relief as this Court deems proper.

Respectfully Submitted
Benny Johnson
12/05/24

Benny Johnson
DOC# 1368576
HU #3A - 117
ERDCC
2727 Hwy. K
Bonne Terre, MO 63628

| | |
|---|---|
| Benny Johnson<br>Plaintiff | |
| V.<br><br>State of Missouri, et al<br>Defendants | Case No. 1:24-CV-00194 SPM |
| 35th Judicial Courts of Missouri | Count 1<br>Corruption |
| The City of Bernie, Missouri | |
| The County of Dunklin, Missouri | |
| Southeast Hospital, Dexter, MO | |
| The City of Dexter, Missouri | |
| The County of Stoddard, Missouri | |
| The County of Dunklin, Missouri | Count 2<br>Cruel and Unusual Punishment |
| The County of Stoddard, Missouri | |
| State of Missouri | Count 3<br>Miscarriage of Justice |
| The County of Dunklin, Missouri | |
| The County of Stoddard, Missouri | |
| 35th Judicial Courts of Missouri | |

# • Jurisdiction and Venue •

This is a Civil Action authorized by 42 U.S.C. Section 1983 and 1985, to redress the deprivation under color of state law, of rights secured by the Constitution of the United States. Venue is proper before this Court pursuant to Section 508.010 of the Revised Statutes of Missouri. This Court has jurisdiction to hear this action as it pertains to violations of Plaintiff's First Amendment Rights, Sixth Amendment Rights, Eighth Amendment Rights, and Fourteenth Amendment Rights, it is also pursuant to Section 478.070 of the Revised Statutes of Missouri and Article I Section 10 and 18a of the Missouri Constitution, and the Sixth Amendment and Fourteenth Amendment of the United States Constitution. This Venue is Proper, actions occurred in the Southeastern District of Missouri.

From hereon I, Benny Johnson, will be referred to as the Plaintiff and I, the Plaintiff, state to the Court my claims:

## Statement of Claims Count I Corruption

1. While incarcerated at the Dunklin County Justice Center, most of my attorney visits were held in the visitors room via phones that are recorded. This allowed the judges and prosecutor's office have access to our conversations This is in violation of attorney/client privilege. Mr. McMullan, my attorney, told me that he had listened to some of my phone conversations.

2. Initally I appeared in front of Judge John C. Speilman, who bound my case over to Judge Robert N. Mayer.

3. Prosecutor Jeffrey McCormick and Mr. John McMullan, my attorney, reached a plea deal of 10 years, but Judge Robert N. Mayer declined it. Judge Mayer stated that he wanted Nicholas D. Jain, the incoming prosecutor to hear and try my case. Judge Mayer and Mr. Jain have a history together. He let this and, what seems to be, his personal beliefs get in the way of justice.

4. Nicholas D. Jain, Dunklin County Prosecutor had two DUI's of his own exponged by Judge Robert N. Mayer prior to him taking office. One of the DUIs that Mr. Jain received while running for office of the prosecutor.

5. Nicholas D. Jain had a DUI moved from Boone County, MO, while in office (2021), He had it moved to Scott County, MO to have it exponged as well.

6. Mr. Nicholas Jain has had all these DUIs, as well as the dismission of marijuana charges, which were exponged by Judge Robert N. Mayer, and is still trying DUI cases and seeking the maximum penalty on them, even while wearing an ankle monitor, for a third DUI.

7. Mr. Nicholas D. Jain would have appeared before Judge John C. Speilman, and possibly Judge Robert N. Mayer, for one or two of these DUIs.

8. Plaintiff would refer the Court to see Kaleum Reid v. Nicholas Jain 18DU-CC00126 and 21SO-CV01141; Bernard Barnes v. Nicholas Jain 22DU-CC00089 and 22DU-CC00095; Matthew Estes v. Robert N. Mayer 24DU-CC00033; State of Missouri v. Nicholas Jain – these charges and case numbers have been removed from Casenet for some reason.

9. Mr. Nicholas D. Jain, Dunklin County Prosecutor, wanted to enhance the charges against me. So, Judge Robert N. Mayer sent my case back to Judge John C. Speilman. Judge Speilman is the judge who issued a warrant for a blood draw to the Missouri Highway Patrol, heard my case initially, and bound it over to Judge Robert N. Mayer. Now he would be the judge to decide whether or not to enhance the charges against me. Due to Judge Speilman's prior involvement in my case, he should have recused himself, as there appeared to be an initial prejudice due to prior involvement. Judge Speilman enhanced the charges against me without the presentation of any new evidence. This was noted during the hearing. I was never formally notified of the charges being enhanced in any form or fashion or by anyone involved in my case. I only appeared back in front of Judge Robert N. Mayer without being notified that I was bound back over to his court.

10. Plaintiff would refer the Court to complaints issued against Judge John C. Speilman with the Office of Retirement, Discipline and Removal in June 2020 for violating a President Mandate Order in Collins v. Estes, 20DU-AC00278.

11. Judge Robert N. Mayer and Nicholas D. Jain, Dunklin County Prosecuto have adjacent offices at the Dunklin County Justice Center. Thei offices are across from one another. This appears to be illegal and conflicting. They decide a case before a person has a day in court for a supposedly fair trial. They listen to phone calls made by the inmates and visiting room conversations together. My attorney, Mr. John McMullan, told me he had listened to my conversations with them. This was the only form of communication that I had to the outside world, as I was denied bond. There also appears to be a mixing of county and state funds in this case

12. I requested a change of judge and change of venue. I was told by my attorney, Mr. John McMullan, while standing at the podium in the courtroom, in front of Judge Robert N. Mayer, that the Supreme Court would decide my changes. This did not happen. The prosecutor, Mr. Nicholas Jain, would not agree to our request to a change of venue to Butler County, MO, outside the 35th Judicial Circuit. Judge Robert N. Mayer, the judge that I was requesting a change from, assigned Stoddard County as my change of venue and Judge Joe Z. Satterfield as my change of judge. Judge Satterfield is an associate and friend of Judge Mayers. Judge Mayer holds another judicial office in Stoddard County. Judge Mayer has an office and a courtroom beside Judge Satterfield's. Judge Mayer is also well acquainted with Russell Oliver, Stoddard County Prosecutor, and other judicial and law enforcement personnel in this county, which is still in the 35th Judicial Circuit.

13. Prejudice, by Judges Speilman, Mayer, and Satterfield, along with Mr. Nicholas D. Jain, Dunklin County Prosecutor, against me may be shown by reviewing the cases of the State of Missouri v. Cory Thompson, State of Missouri v. Jonathan Skaggs, State of Missouri v. Thurby, et al. These cases were without reasonable doubt, whereas mine was based on all circumstantial evidence, coached witnesses, and allowed changes of deposed testimonies. Mr. Cory Thompson was even allowed to be on house arrest for years before his trial. I was not allowed this privilege even to take care of and seek proper medical care for the serious health issues that I have.

14. Josh Roberts, City of Bernie Police Officer, stated that I asked to sit down at the scene. Judge Joe Z. Satterfield ruled that I placed myself under arrest at that point. I did ask to sit down, but it was due to being in pain from being in an accident, which I was eventually taken by ambulance to Southeast Hospital in Dexter, MO for treatment. Officer Roberts was out of the Bernie city limits, out of Stoddard County, where Bernie is located. He was completely out of his jurisdiction. Trooper Todd Watson kept having me moved from vehicle to vehicle and questioned me and had me perform a sobriety test, in field. All this movement without regard to my injuries or how much more damage he could have caused with all the movement. Trooper Watson, after I was placed in the ambulance, came and read me my rights in the ambulance. He told me that he could play hardass if I did not talk when he asked me questions, because I was not answering his questions. I was supposed to have that right. He and Officer Roberts had [illegible] me without reading me any rights, or asking

15. They let all kinds of police officers, who were not involved in my case, specifically Dexter City Police Officers, et al, into the emergency room where I was being treated. I was made a spectical of while trying to receive medical care. This violated HIPA regulations and my privacy rights while impeding my medical care.

16. I was under guard at the hospital full time and was arrested again upon release. This was so they had an additional 24 hours to obtain an arrest warrant and serve it to me. If I was under arrest at the scene, as stated by Judge Joe Z. Satterfield, and by Trooper Todd Watson in his report, then their 24 hour period started then.

17. I was physically and verbally abused by the Missouri State Trooper, who placed me in handcuffs at the hospital, which they estimated to be my time of arrest, but even then, they were unsure of the exact time. This trooper yanked me around extremely hard, nearly causing me to fall. He hurt my back and neck again, what I had been treated for at the hospital. He looked at me and said, hatefully, that I had killed three people and that he hoped that I would never see another free day again. This showed that he and others had already judged me and were prejudiced against me, which they conveyed to others. I requested that Mr. John McMullan, my attorney, file charges for this abuse, but he refused to do so.

18. I was ordered to extend my arms, before they told me that I was under arrest, again, so that the accident investigator could take photographs of my arms. I had two bandages on my arms, one on each arm. They were from where I had two IVs placed in my arms the night before by medical staff, in the emergency room at Southeast Hospital. A male nurse in the ICU had removed the IVs, hatefully, and ripped them out of my arms causing wounds that had to be dressed, which the troopers claimed were received during the accident. This was all done without reading me my rights or asking if I wanted an attorney present. No warrant was presented to obtain them either. Mr. John McMullan, my attorney, did not obtain my medical records for trial to show otherwise or make objection, as he had been told what they were from.

19. The accident investigator, Tim Pulley, asked me if I had anything in my pockets. I stated that I did. He told me to empty my pockets, which I did. I had some change, my truck keys, and my wallet with

immediately snatched the keys out of my hand, stating that he needed them. Again, before reading me my rights, without a warrant, or asking if I wanted an attorney present or letting me request one.

20. I was transported, by the abusive trooper, to the Dunklin / Stoddard County line. I was then exchanged to Trooper Todd Watson and his vehicle. Trooper Watson had a conversation with this trooper, as had Trooper Pulley prior to me being transported. Trooper Watson finished transporting me to the Dunklin County Justice Center. He questioned me during transport, without reading me my rights, asking if I wanted an attorney present, or letting me request one.

21. City of Bernie police officer, Josh Roberts, let an individual, Brant Bristow, leave the scene and swap vehicles. No one should have left the scene, so that no evidence left the scene.

22. Upon arrival at the Dunklin County Justice Center, Trooper Todd Watson escorted me to booking, where I was read my rights and booked in. At this time, Trooper Watson did a best guess estimate of my time of arrest at the hospital, which was used again. It seemed like they tried to make my time of arrest whatever they needed, in order to have 24 hours to obtain an arrest warrant from Judge John C. Speilman. According to Judge Joe Z. Satterfield, the time of arrest was at the scene, when I asked to sit down and according to Judge Joe Z. Satterfield and that I did not have to be marandized in order to be questioned. Also, Trooper Watson, in his report submitted to the court, stated that he arrested me on the scene the night of July 4, 2017.

23. Mary Loyd, my sister, called the Dunklin County Justice Center to tell them what medications that I required. They had her to bring in my medications so they did not have to furnish them to me for the first month. She had to furnish my psoriasis lotion the whole time while I was incarcerated there, so they did not have to provide it. She had to buy it and drive 50+ miles round trip every time she had to bring it or something to them.

24. Dunklin County Justice Center charged me for outside medical visits. They had my sister, Mary Loyd, put money on my account, then they pulled it from my account and wrote a check from the Dunklin County Justice Center account made out to the Ferguson Medical Clinic. They kept the receipt, even though I requested it from them. I can only assume that they wrote it off of their taxes, even though I paid for it. I fell and hurt my shoulder while incarcerated there, [illegible]
[illegible] I was placed under 24 hour observation and made to

wait more than 24 hours before I was taken to get the required medical attention, because the jail nurse, Ashley Graham, thought I was faking. One medical clinic turned me away because I could not pay for their services immediately. I was taken to the emergency room in Hayti, MO, Pemiscot County. I received a bill from them for services rendered, which I still owe. This is verifiable by witness statement.

25. Orville Sipes, a maintenance worker for the Dunklin County Justice Center, was a first responder at the accident scene in my case. He made comment to me about it and talked to the jailers and other inmates about my case. He should not have been talking about my case to anyone, especially the other inmates, as this could have endangered my life. I did receive some negative comments due to his actions.

26. Plaintiff would refer the Court to see State of Missouri v. Orville Sipes, This is a showing of wrongful collaboration within the courts showing corruption.

27. Ashley Graham, the jail nurse at the Dunklin County Justice Center, commented negatively on my case during a medical visit, in the presence of three other people. She accused me of trying to use my medical issues as an excuse to seek bond in my case. This was a slanderous comment and her being a contracted medical employee and non-legal personnel, she had no right making any comment about my case. She was allowed to be in the booking area and go through the computers, accessing inmates personal files. She would also taunt and curse inmates while in the booking area. She was allowed to perform these actions as she was in/had a personal relationship with the jail administrator, Nicole Green.

28. Plaintiff would refer the Court to see Matthew Estes v. Dunklin County, 24DU-CC00011. This is a showing of corruption within th county system.

29. Dunklin County Justice Center sold toiletries to the inmates once a week. They sold trial sized products of toothpaste, shampoo, soap, and deodorant. They also sold razors and feminine products for the female inmates. Keeping tally of what you got, they automatically charged your account for the amount. Those who had no money on their accounts, were still charged and had negative account balances, which was taken out of any money they may have received first. They would come in and do cell searches on occasion. They took extra toothpaste and shampoo from me, as well as other inmates, on a couple of occasions. I was not reimbursed for it, even though I had paid for it and requested that they do so or return it to me. I have witnessed them put it back on the cart, where it

was resold to other inmates, especially if they were running short on supplies.

30. Dunklin County Justice Center employees conducted a cell search one day. The jail nurse, Ashley Graham, a contracted medical employee, participated in the search. She went into my cell and took several bags of chips, peanut butter snack crackers, and cookies that I had purchased from canteen. I requested that the items be returned or that I be reimbursed for the cost of the items, both were denied to me. This is a showing of illegal search and seizure by an unauthorized employee/individual and theft of property.

31. During my time at the Dunklin County Justice Center, I wrote to the Office of Retirement, Discipline, and Removal on 06/23/2021, to file a complaint against all the judges involved in my case, Speilman, Mayer, and Satterfield. James Smith, of this office replied to me stating that my complaint was against Judge Joe Z. Satterfield only. His response was dated 07/08/2021. I wrote back to them on 08/03/2021 and told them that the complaint was actually about all three judges who were or had been involved in my case. I received another response from his office. Mr. James Smith stated that they had no legal basis to proceed. This response was dated 10/18/2021. I believe that between July and October 2021, that Mr. Smith notified Judge Joe Z. Satterfield, and possibly Judges Mayer and Speilman, of my complaint against them. This would have caused extreme prejudice against me and my case. If notification was given, Judge Satterfield should have recused himself from my case.

32. I gave my attorney, Mr. John McMullan, the letter that I had received from Mr. James Smith, Office of Retirement, Discipline, and Removal, during my trial so that he could confront and ask Judge Joe Z. Satterfield if he had received notice of this complaint and, if so, request his recusal. Mr. McMullan refused to confront Judge Satterfield with the letter. Any knowledge of my complaint would have caused prejudice in my case.

33. I wrote Mr. James Smith, Office of Retirement, Discipline, and Removal, in January 2023 and requested a copy of my file, including any and all correspondences about my complaint with Judge Joe Z. Satterfield regarding my complaint. Mr. Smith responded and sent me a copy of everything that was in my file. He stated that any correspondences about my complaint with Judge Satterfield were private and denied to me. I requested this information because I felt that there had been communication between

Mr. Smith's office and Judge Satterfield. I assert this because my complaint mentioned that Judge Joe Z. Satterfield and Russell Oliver, Stoddard County Prosecutor, having a business together, a meat shop in Dexter, MO. Between the time I filed the complaint and my trial in front of Judge Joe Z. Satterfield (06/21 - 10/21), Russell Oliver sold his share of the business to his partner, Judge Satterfield. This business also provided meat to the Stoddard County Jail. There are too many coincidences for there not to have been communication, whether professional or private.

34. Plaintiff would refer the Court to see complaints made with the offices of Retirement, Discipline, and Removal and Office of Chief Disciplinary Council. On behalf of Benny Johnson and also to show support on this behalf see Matthew Thomas Estes. The complaints are against the same officials. Documentation will be attached.

35. Stoddard County Jail made me pay for my medical visits. I had to file for charity through Southeast Hospital to get my medical visits paid for. They charged me for all my medications and, again, Mary Loyd, my sister, had to purchase and deliver my psoriasis lotion to me while incarcerated there, about 50± miles round trip. They, Stoddard County Jail, even filed a motion with Judge Satterfield's court to have me pay for all my medications, which they let me run out of often.

36. Stoddard County, my change of venue, sent me back to Dunklin County Justice Center to be held while awaiting trial. Their reasoning, I was a Dunklin County expense due to my medical needs, where I remained for over two years before being returned to Stoddard County. They stated with the court that I was returned to be treated by a doctor that was familiar with my health issues. This is all false because if I were able to obtain medical care while at Dunklin County Justice Center, it was substandard. At Stoddard County, I was treated by actual doctors and nurse practicioners, who were more familiar with my medical issues, as I had been treated by Southeast Health several times prior to being incarcerated.

37. In October 2021, I was returned to Stoddard County for my pre-trial hearing. Judge Joe Z. Satterfield denied most of my pre-trial requests. He allowed basically all of Mr. Nichdas D. Jain, Dunklin County Prosecutor's requests. At this time, I was allowed to return to my change of venue, Stoddard County Jail. This is another showing of the corruption within the 35th Judicial Circuit.

38. Russell Oliver, Stoddard County Prosecutor, who was not supposed to be involved in my case, was allowed to sit in the courtroom during my trial. He sat next to Judge Joe Z. Satterfield, the witness box, and the jury. He was allowed to consult with Nicholas D. Jain, Dunklin County Prosecutor, and be in the prosecution's witness

room during my trial. His involvement goes back to the complaint that I filed with the Office of Retirement, Discipline, and Removal. Another showing of corruption and obstruction of justice. Witnesses will corroborate.

39. Russell Oliver, Stoddard County Prosecutor, Nicholas D. Jain, Dunklin County Prosecutor, and Stoddard County Judge Joe Z. Satterfield loaded the jury pool with people:

1) that had recently been on a jury that had found people guilty, within the last year or two.
2) had children that go to school where Trooper Tim Pulley's twin brother coaches their children.

Another showing of corruption in the 35th Judicial Circuit. Testimony by Kelli Asher, Juror #4 and witnesses will corroborate.

40. Judge Robert N. Mayer was present at the Stoddard County Courthouse all three days of my trial. He was seen coming out of the jury room while the jurors were present there. He was witnessed going back and forth to Judge Joe Z. Satterfield's office during trial breaks on multiple occasions. Judge Robert N. Mayer should not have been in Stoddard County during my trial, as he was the judge that I had requested a change from. He is also the one who appointed Judge Joe Z. Satterfield as my change of judge. He should not have been communicating with Judge Satterfield, or anyone involved in my trial, during my trial. Judge Robert N. Mayer should not have been present or involved in my trial in any manner. This is another showing of corruption and obstruction of justice within the 35th Judicial Circuit. This will be corroborated by witness statements.

41. Judge Joe Z. Satterfield called my sister and brother-in-law, Mary and Dennis Loyd, into his office and told them what they could and could not say on the witness stand. They were my witnesses and were present at the accident scene on 07/04/2017, thereby having much information on my behalf. My attorney, Mr. John McMullan, was present, but made no objections or any arguement against this. Judge Satterfield gagged my witnesses to give the prosecution an advantage. Mary Loyd, Dennis Loyd, and any of my witnesses were made to wait outside the courtroom and instructed not to talk to anyone. Mary Loyd never even got to testify. Judge Satterfield threatened to lock them up if they said anything he or Nicholas D. Jain, Dunklin County Prosecutor, did not agree with. They basically rigged the trial for a win. This again showing the corruption within the 35th Judicial Circuit.

42. There was a direct and willful violation of the Brady Law in order to withhold evidence and witnesses in a wrongful collaboration to help the prosecution.

43. Plaintiff states that my attorney, Mr. John McMullan and the Courts and Prosecution showed corruption by violating the gag law on witnesses willing to give testimony on my behalf thereby obstructing justice.

44. Trooper Tim Pulley was allowed to sit in the courtroom the entire time during my trial, even before he testified, but my and other witnesses could not be in the courtroom. Trooper Pulley sat directly behind my family that was in the courtroom. He snickered and taunted them during my trial.

45. The prosecutor's witnesses were kept in a room right off of the courtroom. The prosecutor, his staff, and other troopers, et al, were rehearsing and coaching their witnesses before taking the witness stand. This was proven by the admission of being coached by Tayhlar Santana on the witness stand. This was also evident in June Robinson's testimony, as she was allowed to change her testimony from her deposition while on the witness stand, to match what Nicholas D. Jain, Donklin County Prosecutor, needed her to say, without reprecussion or much objection from Mr. John McMullan, my attorney. This was a blatant display of perjury, in a wrongful collaboration to help the prosecution.

46. Trooper Tim Pulley was photographed having a conversation with Kelli Asher, Juror #4 of my jury. Witnesses saw and heard their conversation, which they denied. Judge Joe Z. Satterfield denied my request for a mistrial. This action shows prejudice towards me and the corruption within the 35th Judicial Circuit. Witness statements will corroborate this.

47. One of the victims family members was also seen and heard while talking to the jurors about how much he loved his ex-wife. He, Justin Claibourn, being a deputy in Cass County, MO, should have known this practice is forbidden during a trial. He was trying to sway the jurors. My family was instructed to have no contact with the jurors or other witnesses, as I'm sure they were also.

48. Trooper Tim Pulley was allowed to speak directly to the jurors while on the witness stand. He was allowed to speak directly to witnesses for the prosecution. It appeared that Judge Joe Z. Satterfield gave him free reign to do whatever he wanted to during my trial. Another showing of the prejudice and Corruption in the 35th Judicial Circuit.

49. The phlebotomist from Southeast Hospital, Dewayne Rhody, could not testify that he drew both blood samples with certainty, which he did not. A female medical staff member in the emergency room drew the first blood sample. He testified that he would have followed procedure and used Betadine on the draw site(s). He nor the female staff member used Betadine, but swabbed the IV port with an alcohol swab before drawing the blood samples. There were so many people in the room that I was being treated in that no one knew what they or others were doing. This is evident in the photographs of my arms, as no Betadine stains are present. This and other questionable testimony/evidence was allowed during my trial.

50. Jeremy Jones, Missouri Highway Patrol Crime Lab Supervisor, Could not say for certain that the blood samples were mine or that he could prove through DNA testing of the blood sample that he could prove this. He could not even say that they could do a DNA test on the blood. He gave estimated blood alcohol levels on the blood samples. This questionable testimony was allowed as well.

51. My attorney, Mr. John McMullan, was given a list of witnesses on my behalf in approximately July 2017. He was supposed to depose them for me. He gave this list to the Dunklin County Prosecutor's Office before deposing them. Mr. McMullan waited until two weeks before my trial, approximately four and a quarter years, to depose most of the few witnesses he did depose. During this time, they were visited by an investigator from the prosecutor's office. They changed their accounts of the events of July 4, 2017. As stated earlier, June Robinson had been deposed earlier, but was allowed to change her testimony on the stand with no accountability. It again showing the coaching and corruption in the prosecutor's office and [illegible] Judicial Circuit.

52. My attorney, Mr. John McMullan, told me that he did not want to press his examination and cross-examination of the prosecutor's witnesses too hard because it would make us look bad and fear of retaliation by law enforcement. Mr. McMullan did get stopped / harassed, within a week of my trial, by a Missouri Highway Patrol officer while making a trip to the Stoddard County Jail to have me sign a pre-sentencing investigation waiver after my trial. Another showing of corruption.

53. Immediately after my trial was over and the jury had been dismissed and had left the courtroom, Mr. Nicholas D. Jain, Dunklin County Prosecutor, approached Judge Joe Z. Satterfield, who was still seated on the bench. Mr. Jain told Judge Satterfield that he had heard that I had prior DUIs, other than the one Mr. Jain brought to the court's attention. Judge Satterfield told him that if he found out that I did, that he would just give me a life sentence. I got Mr. John McMullan's attention, my attorney, and told him what had been said and that he needed to go up to the bench too, but he was too interested in finding a granola bar. He stated that they were just congratulating each other on the trial. I told him again what was said and that it was not just congratulating one another, but he just dismissed my concern. Courtroom video will prove this, as will witness statements. This is just another showing of the corruption and misjustices that are ever present in the 35th Judicial Circuit.

54. I filed a waiver to be sentenced without a pre-sentencing investigation. When the time got close for me to be sentenced, Judge Joe Z. Satterfield, at the request of Nicholas D. Jain, Dunklin County Prosecutor, put my sentencing off for another month, making it two months since my trial. Mr. Jain's office contacted the State of Tennessee and proceeded with an investigation before my sentencing, hence the delay in my sentencing, without objection from my attorney, Mr. John McMullan. This shows the prejudice towards me and the blatant disregard for the legal system and my rights, as they did what they wanted to do, per their post-trial conversation. Another showing of the corruption in the 35th Judicial Circuit.

55. At my sentencing, Judge Joe Z. Satterfield remarked that I had shown no remorse for the family and that I was only looking out for my own interests, before he sentenced me and smiled. I thought I was allowed to have a trial and try to defend myself, although it was useless in his court. The only justice in his court is misjustice and a complete disregard for due process and the justice system.

56. Stoddard County filed a motion with Judge Joe Z. Satterfield's court to have me pay for the jury expenses.

57. My attorney, Mr. John McMullan, did not work hard for me because he did not want to look bad in the courtroom, he was afraid of harassment, I could not pay him enough money, and he had initially said he thought I was guilty. I wanted to terminate Mr. McMullan's employment, but I was told that I would not be appointed counsel if I did so.

58. I had requested that Mr. John McMullan, my attorney, request a fast and speedy trial, but he never requested it for me.

59. The Missouri Highway Patrol released my truck, evidence, to the insurance company before the defense had a chance to examine it and without notification to them. My attorney should have been notified and allowed to examine it in order to help build his defense. This is a showing of the prejudice and corruption between the Missouri Highway Patrol, Courts, and the prosecutors.

60. Brian Wicker, wrecker driver/owner, testified that he disconnected the battery on my truck. This action automatically resets the computer. So, the data that the Missouri Highway Patrol has is, at most, questionable. They accessed my truck with the keys that they seized illegally at the hospital.

61. I was denied a move out of the area, even though there was extensive television news coverage by several local and distant television stations. They aired the story several times and for several days on these stations. The Missouri Highway Patrol made sure it aired on WBBJ-TV, Jackson, TN, which is over the area where I live. They also put it on

Facebook news, where I received death threats and that my friends would see it.

62. Plaintiff claims a violation of rights and there is law on wrongful ways on seizing evidence illegally. Plaintiff will attach a showing making a claim like this.

63. Nicholas D. Jain, Dunklin County Prosecutor, and members of his staff coached all the prosecution's witnesses, used leading questions, which were allowed without objection, and revised and enhanced the victim's impact statements that were presented and read at my trial, so as to influence the jury even more. Witness testimony, trial transcript, and courthouse video will prove this. This is a showing of corruption within the prosecutor's office.

64. Plaintiff alleges that the treatment he has suffered, and is still suffering, is degrading to human dignity and that his Amendment Rights were violated and in doing so this inflicted emotional harm upon him by the Defendants from which not only the Plaintiff, but his family are suffering from still yet today...

65. Plaintiff asks this Honorable Court to enter judgement and Sanctions against the Defendants that is fair and reasonable as the Court deems fair... A dollar amount can not be figured on at this time.

Benny Johnson, the Plaintiff, asks this Court to prevail on justice... as this Court deems proper.

Statement of Claims Count 2 Cruel & Unusual Punishment

1. I was denied proper medical care at the Dunklin County Justice Center. When I arrived there, I had wounds on my arms that were open and subject to bleeding. I was refused clean bandages with which to change and redress my wounds with by Ashley Graham, jail nurse, and the jail staff. I had to use makeshift bandages. I had to use tolict paper and socks with which to dress my wounds. I also documented the mistreatment of other inmates during my time there.

2. Due to my case, they held me in the booking cell with up to six other people and had to sleep on a nasty floor.

3. Plaintiff would refer the Court to see Case No. 24DU-CC00011, one claim against Nicole Green, jail administrator, Dunklin County Justice Center. This is a showing to support my claim of actual truth.

4. Due to my case, I was made a "trustee" so that I was held with fewer inmates. I was put to work in the kitchen for several months at the Dunklin County Justice Center. I started out washing dishes and ended up cooking and serving. I worked 16 hours a day, most days, with no pay. I was "fired" due to eating an extra cookie while working.

5. The jail nurse, Ashley Graham, would deny medical care to myself and others. I filled out a medical request form once and it was three months before I was finally seen, even though I would ask on a daily basis. Ashley Graham, the jail nurse, would go hang out in the booking area and act like a correctional officer. She would curse and agitate the inmates, even though she was just a contracted medical employee. This was allowed due to the personal relationship she had with Nicole Green, Dunklin County jail administrator.

6. I was denied proper medications by Ashley Graham, jail nurse at Dunklin County Justice Center. One of my medications was pulled from the market. Instead of getting the doctor to prescribe me a comparable medication, I was given a cheaper, over-the-counter medication.

7. I fell and hurt my shoulder while incarcerated at the Dunklin County Justice Center, due to water on the floor from a shower. I was placed under 24 hour observation and made to wait more than 24 hours before I was taken to get the required medical attention, because the jail nurse, Ashley Graham, thought I was faking. One medical clinic turned me away because I could not pay for their services immediately. I was taken to the emergency room in Hayti, MO, Pemiscot County. I received a bill from them for services rendered, which I still owe, even though I received the injury on Dunklin County Justice Center property.

8. I was charged for medical visits, as shown in the previous claim. On one occasion they took me to my own doctor at the Ferguson Medical Clinic in Sikeston, MO. They had my sister, Mary Loyd, put money on my account, then they pulled it from my account ($71), wrote a check from the Dunklin County Justice Center account made out to the medical clinic. They kept my receipt even though I requested it. I can only assume that they wrote it off of their taxes, even though I paid for the visit. This can be proven by a review of their books, checking account records, and tax return.

9. My sister, Mary Loyd, called the Dunklin County Justice Center to tell them what medications that I required, the day I arrived there. They had her to bring in my medications so they did not have to furnish them to me for the first month. She had to furnish my psoriasis lotion the whole time I was incarcerated there, so they did not have to furnish it for me. She had to buy it and drive 50+ miles, round trip, every time she had to bring it or something to them.

10. Ashley Graham, jail nurse at the Dunklin County Justice Center, commented negatively on my case during a medical visit, in the presence of three other people. She accused me of trying to use my medical issues as an excuse to seek bond in my case. This was a slanderous comment and her being a contracted medical employee and non-legal personnel, she had no right making any comment about my case. She was

allowed to be in the booking area and go through the computers, accessing inmates personal files. She was allowed to perform these actions, as she had a close personal relationship with the jail administrator, Nicole Green.

1. Plaintiff would ask the to refer to case no. 24DU-CC00011, Estes v. Dunklin County. Plaintiff pray that the Court would honor his claims, as there are other victims making claims against the same Defendants.

2. Dunklin County Justice Center sold tolietries to the inmates once a week. They sold trial-sized tolietries, toothpaste, shampoo, soap, and deodorant, along with razors and feminine supplies for the female inmates, keeping a tally of what each person got, they automatically charged your account. Toliet tissue also had to be purchased. If a person had no money on their account, they ran you up a bill, or negative account balance. They would get their monies first by doing this if a person then received money. They took my extra toothpaste and shampoo on a couple of occasions while doing cell searches. I was not reimbursed for it, even though I had paid for the items, and requested they do so. I have witnessed them put these items back on the cart and resell them to other inmates, especially if they were low on supplies. This is a showing of theft of property.

13. Dunklin County Justice Center employees conducted cell searches one day. The jail nurse, Ashley Graham, a contracted medical employee, participated in the search. She went into my cell and took several bags of chips, peanut butter snack crackers, and cookies that I had purchased from canteen. I requested that the items be returned or that I be reimbursed, both requests were denied. This is another showing of theft of property.

14. While at the Dunklin County Justice Center, I was made live in a one man cell with another person for more than two months. During this time I was required to live with two different people. I or they had to sleep on the floor next to the toliet. One of these people I was with, a 70+ year old man, urinated on the floor, from the bed to the toliet one night. I had to lay on the floor, with my head next to it. I had to do this for several hours before I could get them to clean it up, even though I notified them of it when it happened, even after making

multiple requests. I even volunteered to clean it up if they would bring me the supplies to do so, they would not. They even tried to blame the incident on me. I was clearly unable to sleep for the rest of the night. When they finally did come clean it up, they were not going to give this old man dry clothes or bedding. They finally gave him dry clothes after I complained to them enough, but they waited days to give him a shower. I have this incident documented and the denial of proper care of another inmate as well. This documentation will be provided along with the witness statement of Mary Loyd.

15. I had inmates steal my canteen twice. They were captured on video, but I could not get the Dunklin County Justice Center correctional officers to do any thing about it.

16. I was working in the Dunklin County Justice Center kitchen one day, when a deputy came in and called me out. She, the deputy, told me that she needed to talk to me. She took me to their interrigation room, where I was read my rights and video recorded our conversation. She questioned me about a burglary that had happened. I had no clue what they were talking about. She kept insisting that she had my cell phone. I kept telling her that my sister, Mary Loyd, had my phone. Turned out that they had the wrong person. The person they wanted to talk to was a federal inmate, Benny Jackson. I was returned to the kitchen and resumed working. On another occasion, the sheriff, Bob Holder, came to the wing where I was being held and called me out. I asked what was going on. He told me that a federal attorney was there to speak to me. I said they probably wanted Benny Jackson. I was right and told him what wing Benny Jackson was being held in. These incidents caused me extra stress in an already strange and stressful environment.

17. Myself and other inmates had to sleep on the floor at the Dunklin County Justice Center. I and others found spiders in our beds. Some inmates even suffered from spider bites and received little or no medical care from the jail nurse, Ashley Graham.

18. The shower ceilings, curtains, and some walls at the Dunklin County Justice Center had black mold on them and were rarely cleaned.

19. While incarcerated at the Dunklin County Justice Center, I got sick and was running a fever. I kept telling the correctional officers. Finally one of them took my temperature, blood pressure, and asked what symptoms that I was experiencing. After I to

She came back shortly and brought me an antibiotic. She said that she had spoken to the doctor by phone. After a couple of days, I was broken out in a rash and had water blisters on my hands. I showed and told this same correctional officer. She left and returned a short time later with some Benadryl. Again, she said she had spoken with the doctor. I took Benadryl for two days and finally cleared up. The doctor should have been aware that I am allergic to certain antibiotics. I believe that the correctional officer and probably the jail nurse, Ashley Graham, were treating me. This incident could have been much worse. I wondered why I was being treated by a correctional officer only.

10. Stoddard County Jail charged me for all my medications. My sister, Mary Loyd, had to purchase and bring me my psoriasis lotion the entire time I was incarcerated there. She had to purchase it and bring it to me, which was 50+ miles round trip. After leaving the Stoddard County Jail, they filed a motion with Judge Joe Z. Satterfield's court to have me pay for all the medications that I received while incarcerated there.

21. Stoddard County Jail made me pay for my own medical bills. I had to file for charity through Southeast Hospital to get my medical care paid for.

22. While incarcerated at the Stoddard County Jail, I, and others, had to sleep on the floor. Often times finding spiders in our beds. One inmate found a black widow spider. Some inmates even suffered from spider bites.. Most times there were normally four to five people in a two man cell.

23. Stoddard County Jail had one shower per wing unit. We were allowed to shower every other day. With approximately 25 people in one unit, it was a tight schedule for all to shower. There were days that they would not open the shower for use until noon or later. If court was in session, often times it would be late afternoon. There were times that some people did not get to shower, making it four days between showers.

24. The shower room was covered in black mold, as was the hallway ceiling. The toliet in the shower room did not work, and was stuffed with cotton batting, in our wing unit at the Stoddard County Jail.

25. Stoddard County Jail did not provide hygiene products to the inmates. If you did not have money on your account to purchase these items, you were out of luck. Other inmates would share or provide shampoo, soap, and deodorant, even purchase razors, to the inmates who did not have, as the Stoddard County Jail would not.

26. Due to people having to sleep on the floor, spider bites were common. Again, getting medical care for these was difficult to non-existant, due to the issue of having to pay for our own medical care at the Stoddard County Jail, even though it occurred there.

27. When I was returned to my change of venue, Stoddard County Jail, I was placed in a cell without a bunk, so I had to sleep on the floor. The toliet was a hole in the floor that was clogged up and could not be flushed. It was covered with cardboard, which had to be moved when I had to go to the bathroom. This let the horrible odor into the cell. I had to eat next to this as well. I was held in these conditions for approximately 48 hours.

28. Plaintiff alleges that the treatment he has suffered and is still suffering, is degrading to human dignity and that his Amendment Rights were violated and in doing so this inflicted emotional harm upon him by the Defendants from which not only the Plaintiff, but his family are suffering from still yet today...

29. Plaintiff asks this Honorable Court to enter judgement and Sanctions against the Defendants that is fair and reasonable as the Court deems fair... A dollar amount can not be figured on at this time.

Benny Johnson, the Plaintiff, asks this Court to prevail on justice... as this Court deems proper.

# Statement of Claims Count 3 Miscarriage of Justice

. While incarcerated at the Dunklin County Justice Center, most of my attorney visits were held in the visitors room via phones that are recorded. The judges and prosecutors office have access to these conversations. This is a violation of attorney/client privilege. Mr. McMullan, my attorney, told me that he had even listened to some of my phone conversations. All these people and offices should not have access to these.

2. Prosecutor Jeffrey McCormick, Dunklin County, and Mr. John McMullan, my attorney reached a plea deal of 10 years, but Judge Robert N. Mayer declined it, stating that he wanted Nicholas D. Jain, the incoming prosecutor to hear and try my case. Judge Mayer and Mr. Jain have a history together. Judge Mayer let this, and what seems to be, his personal beliefs get in the way of justice.

3. Nicholas D. Jain, Dunklin County Prosecutor had two DUIs of his own exponged by Judge Robert N. Mayer prior to him taking office. One of the DUIs, Mr. Jain received while running for office.

4. Mr. Nicholas D. Jain has had these DUIs as well as two charges for possession of marijuana exponged by Judge Robert N. Mayer and is still trying DUI cases and possession cases, seeking the maximum penalty on them, even while wearing an ankle monitor. These cases and case numbers have been removed from Casenet for some reason.

5. Plaintiff would refer the Court to see Kaleum Reid v. Nicholas Jain, 18DU-CC00126 and 2150-CV01141; Bernard Barnes v. Nicholas Jain, 22DU-CC00089 and 22DU-CC00095; Matthew Thomas Estes v. Robert N. Mayer, 24DU-CC00033; State of Missouri v. Nicholas Jain - case numbers have been recently removed from Casenet.

6. Mr. Nicholas D. Jain, Dunklin County Prosecutor, wanted to enhance the charges against me. Judge Robert N. Mayer sent the case back to Judge John C. Speilman. Judge Speilman is the judge who issued a warrant for a blood draw to the Missouri Highway Patrol, which I have never seen a copy of, heard my case initially, and bound it over to Judge Robert N. Mayer. Now he would be the judge to decide whether or not to enhance the charges against me. Due to Judge Speilman's prior involvement in my case, he should have recused himself,

as there appeared to be an initial prejudice due to prior involvement. Judge Speilman enhanced the charges against me without the presentation of any new evidence. This was noted during the hearing. I was never formally notified of the charges being enhanced in any form or fashion or by anyone involved in my case. I only appeared back in front of Judge Robert N. Mayer without being notified I was bound back over to his court.

7. Plaintiff would refer the Court to complaints issued against Judge John C. Speilman with the Office of Retirement, Discipline, and Removal in June 2020 for violating a Presidential Mandate Order in Collins v. Estes, 20DU-AC00278.

8. Judge Robert N. Mayer and Nicholas Jain, Dunklin County Prosecutor, have adjacent offices at the Dunklin County Justice Center. Their offices are across from one another. This appears to be illegal and conflicting. They decide a case before a person has a day in court for a supposedly fair trial. They listen to phone calls made by the inmates and visiting room conversations together. My attorney, Mr. John McMullan, told me he had listened to my conversations with them. I had no other form of communication with the outside world or witnesses other than these. There also appears to be a mixing of county and state funds in this close arrangement of offices in the same building. The Missouri State Highway Patrol also has an office here.

9. I requested a change of judge and a change of venue. I was told by my attorney, Mr. John McMullan, while standing at the podium in the courtroom, in front of Judge Robert N. Mayer, that the Supreme Court would decide my changes. This did not happen. The prosecutor, Nicholas D. Jain, would not agree to our request to a change of venue to Butler County, MO, outside of the 35th Judicial Circuit. Judge Robert N. Mayer, the judge I was requesting a change from, assigned Stoddard County as my change of venue and Judge Joe Z. Satterfield as my change of judge. Judge Satterfield is an associate and friend of Judge Mayers. Judge Mayer holds another judicial

office Stoddard County, Judge Mayer has an office and courtroom next to Judge Satterfield's. Judge Mayer is also an associate of Russell Oliver, Stoddard County Prosecutor, and other judicial and law enforcement personnel in this county, which also lies within the 35th Judicial Circuit.

10. Prejudice, by Judges Speilman, Mayer, and Satterfield, along with Nicholas D. Jain, Dunklin County Prosecutor, against me may be shown by reviewing the cases of the State of Missouri v. Cory Thompson; State of Missouri v. Jonathan Skaggs; State of Missouri v. Thurby; et al. These cases were without reasonable doubt, whereas mine was based on questionable or circumstantial evidence, coached witnesses, and allowed changes of deposed testimonies. Mr. Cory Thompson was allowed to be on house arrest for years before his trial. I was not allowed this privilege even to take care of and seek proper medical care for the serious health issues that I have.

11. Upon arrival at the Dunklin County Justice Center, Trooper Todd Watson escorted me to booking, where I was read my rights and booked in. At this time, Trooper Watson did a best guess estimate of my time of arrest at the hospital, which was used again. It seemed like they tried to make my time of arrest whatever they needed, in order to have 24 hours to obtain an arrest warrant from Judge John C. Speilman. According to Judge Joe Z. Satterfield, the time of arrest was at the scene, when I asked to sit down and according to Judge Joe Z. Satterfield, I did not have to be marandized in order to be questioned, both these by Bernie Police Officer Josh Roberts, who was out of his jurisdiction. Trooper Todd Watson in his report submitted to the court, stated that he arrested me on the scene the night of July 4, 2017. Based on their judgements, I was held almost 48 hours before being presented with a warrant for my arrest.

12. Plaintiff would refer the Court to see State of Missouri v. Orville Sipes. This is a showing of wrongful collaboration within the courts showing corruption.

13. During my time incarcerated at the Dunklin County Justice Center, I wrote the Office of Retirement, Discipline, and Removal on 06/23/2021, to file a complaint against all the judges involved in my case, Speilman, Mayer, and Satterfield. James Smith of this office replied to me stating that my complaint was against Judge Joe Z. Satterfield only. His response was dated 07/08/2021. I wrote back to him on 08/03/2021 and told him the complaint was actually against all three judges who were or had been involved in my case. I received another response from Mr. Smith. He stated to me that they had no legal basis to proceed. This response was dated 10/18/2021. I believe that between July and October 2021, that Mr. Smith notified Judge Joe Z. Satterfield, and possibly Judges Mayer and Speilman, of my complaint against them. This would have caused extreme prejudice against me and my case. If notification was given, Judge Satterfield should have recused himself from my case. This complaint also mentiond the Stoddard County Prosecutor, Russell Oliver.

14. I wrote Mr. James Smith, Office of Retirement, Discipline, and Removal, in January 2023 and requested a copy of my file, including any and all correspondences about my complaint with Judge Joe Z. Satterfield regarding my complaint. Mr. Smith responded and sent me a copy of everything that was in my file. He stated than any correspondences about my complaint with Judge Satterfield were private and denied to me. I requested this information because I felt that there had been communication between Mr. Smith's office and Judge Satterfield. I assert this because my complaint mentioned that Judge Joe Z. Satterfield and Russell Oliver, Stoddard County Prosecutor, having a busines together, a meat shop in Dexter, MO. Between the time I filed the complaint and my trial in front of Judge Satterfield (06/21 - 10/21), Russell Oliver sold his share of the business to his partner, Joe Z. Satterfield. This business also provided meat to the Stoddard County Jail. There are too many coincidences for there not to have been communication, whether professional or private.

15. I gave my attorney, Mr. John McMullan, the letter that I had received from Mr. James Smith, Office of Retirement, Discipline, and Removal, during my trial. I asked him to confront and ask Judge Joe Z. Satterfield if he had received notice of this complaint and, if so, request his recusal. Mr. McMullan refused to confront him with the letter. Any knowledge of my complaint would have caused prejudice in my case.

16. Plaintiff would refer the Court to see complaints made with the Office of Retirement, Discipline, and Removal and the Office of Chief Disciplinary Council on behalf of Benny Johnson and also to show support on this behalf see Matthew Thomas Estes. The complaints are against the same officials. Documentation will be attached.

17. In October 2021, I was returned to Stoddard County for my pre-trial hearing. Judge Joe Z. Satterfield denied most of my pre-trial requests. He allowed basically all of Mr. Nicholas D. Jain, Dunklin County Prosecutor's requests. At this time, I was allowed to return to my change of venue, Stoddard County Jail. This is another showing of the corruption within the 35th Judicial Circuit.

18. Russell Oliver, Stoddard County Prosecutor, who was not supposed to be involved in my case, was allowed to sit in the courtroom during my trial. He sat next to Judge Joe Z. Satterfield, the witness box, and the jury. He was allowed to consult with Nicholas D. Jain, Dunklin County Prosecutor, and be in the prosecution's witness room during my trial. His involvement goes back to the complaint that I filed with the Office of Retirement, Discipline, and Removal. Witnesses will corroborate.

9. Russell Oliver, Stoddard County Prosecutor, Nicholas D. Jain, Dunklin County Prosecutor, and Stoddard County Judge Joe Z. Satterfield loaded the jury pool with people:

1) that had recently been on a jury in Stoddard County that had found people guilty within the last year or two.

2. had children that go to school where Trooper Tim Pulley's twin brother coaches their children.

Another showing of the corruption within the 35th Judicial Circuit. Testimony of Kelli Asher, Juror #4 and witnesses will corroborate.

20. Judge Robert N. Mayer was present at the Stoddard County Courthouse all three days of my trial. He was seen coming out of the jury room while the jurors were present there. He was witnessed going back and forth to Judge Joe Z. Satterfield's office during trial breaks on multiple occasions. Judge Mayer should not have been in Stoddard County during my trial, as he was the judge that I had requested a change from. He is also the one who appointed Judge Joe Z. Satterfield as my change of judge. He should not have been communicating with Judge Satterfield, or anyone involved in my trial, during my trial. Judge Mayer should not have been present or involved in my trial in any manner. This will be corroborated by witness statements.

21. Judge Joe Z. Satterfield called my sister and brother-in-law, Mary and Dennis Loyd, into his office and told them what they could and could not say on the witness stand. They were my primary witnesses and were present at the accident scene on 07/04/2017, thereby having much information on my behalf, My attorney, Mr. John McMullan, was present, but made no objections or arguements against this. Judge Satterfield gagged my witnesses to give the prosecution an advantage. Mary Loyd, Dennis Loyd, and any of my witnesses were made to wait outside the courtroom and instructed not to talk to anyone, Mary Loyd never even got to testify. Judge Satterfield even threatened to lock them up if they said anything he or Nicholas D. Jain, Dunklin County Prosecutor, did not agree with. They basically rigged the trial for a win.

22. There was a direct and willful violation of the Brady Law in order to withhold evidence and witnesses in a wrongful collaboration to help the prosecution.

23. Plaintiff states that my attorney, Mr. John McMullan, and the courts and prosecution showed corruption by violating the gag law on witnesses willing to give testimony on my behalf thereby obstructing justice.

24. The prosecutor's witnesses were kept in a room right off of the courtroom. The prosecutor, his staff, and other troopers, et al, were rehearsing and coaching their witnesses before taking the witness stand. This was proven by the admission of being coached by Tayhlar Santana on the witness stand. This was also evident in June Robinson's testimony, as she was allowed to change her testimony from her deposition testimony, while on the witness stand, to match what Nicholas D. Jain, Dunklin County Prosecutor, needed her to say, without reprecussion or much objection from Mr. John McMullan, which was ignored. This was a blatant display of perjury, in a wrongful collaboration to help the prosecution.

25. Trooper Pulley was photographed having a conversation with Kelli Asher, Juror #4 of my jury. Witnesses saw, heard, and photographed this conversation, which they denied. Judge Joe Z. Satterfield denied my request for a mistrial. This action showed prejudice towards me and the corruption within the 35th Judicial Circuit, as well as the collaboration to help the prosecution. Witness statements and trial transcripts will verify this.

26. Trooper Tim Pulley was allowed to speak directly to the jurors while on the witness stand. He was allowed to speak directly to the witnesses for the prosecution. It appeared that Judge Joe Z. Satterfield gave him free reign to do whatever he wanted to do during my trial. Showing once again the prejudice and corruption that I encountered in the 35th Judicial Circuit.

27. My attorney, Mr. John McMullan, was given a list of witnesses on my behalf in approximately July 2017. He was supposed to depose them for me. He gave

to the Dunklin County Prosecutor's Office before deposing them for me. Mr. McMullan waited until two weeks before my trial, approximately four and a quarter years, to depose them, the few that he did. During this time they were visited by an investigator from the prosecutor's office. They changed their accounts of the events of July 4, 2017. As stated earlier, June Robinson had been deposed earlier, but was allowed to change her testimony on the stand with no accountability.

28. My attorney, Mr. John McMullan, told me that he did not want to press his examination and cross-examination of the prosecutor's witnesses too hard because it would make us look bad and for fear of retaliation by law enforcement. Mr. McMullan did get stopped/harassed within a week of my trial, by a Missouri Highway Patrol officer, while making a trip to the Stoddard County Jail to have me sign a pre-sentencing investigation waiver after my trial.

29. Immediately after my trial was over and the jury had been dismissed and had left the courtroom, Mr. Nicholas D. Jain, Dunklin County Prosecutor, approached Judge Joe Z. Satterfield, who was still seated on the bench. Mr. Jain told him that he had heard that I had prior DUIs, other than the one he brought to the court's attention. Judge Satterfield told Mr. Jain that if he found out that I did, that he would just give me a life sentence. I got Mr. John McMullan's attention, my attorney, and told him what had been said and that he needed to go up to the bench too, but he was too interested in finding a granola bar. He stated that they were just congratulating each other on the trial. I told him again what was said and that it was not just congratulating one another, but he just dismissed my concern. Courtroom video will prove this, as will witness statements. Again, this was a showing of the prejudice and corruption that I experienced in the 35th Judicial Circuit.

30. I filed a waiver to be sentenced without a pre-sentencing investigation. When the time got close for me to be sentenced, Judge Joe Z. Satterfield, at the request of Nicholas D. Jain, Dunklin County Prosecutor, put my sentencing off for another month, making it two months since my trial. Mr. Jain's office contacted the State of Tennessee and proceeded with an investigation before my sentencing, hence the additional delay in my sentencing, without objection from my attorney, Mr. John McMullan. This shows the prejudice towards me and the blatant disregard for the legal system and my rights, as they did what they wanted to do, per their post-trial conversation. Showing once again, the corruption in the 35th Judicial Circuit. This is verifiable by State of Tennessee records.

31. At my sentencing, Judge Joe Z. Satterfield remarked that I had shown no remorse for the family and that I was only looking out for my own interests, before he sentenced me and smiled. I thought that I was allowed to have a fair trial and try to defend myself, although it was useless in his court. It seems that the only justice in his court is misjustice and a complete disregard for due process and the justice system.

32. Plaintiff alleges that the treatment he has suffered, and is still suffering, is degrading to human dignity and that his Amendment Rights were violated and in doing so this inflicted emotional harm upon him by the Defendants from which not only the Plaintiff, but his family are suffering from still yet today...

33. Plaintiff asks this Honorable Court to enter judgement and Sanctions against the Defendants that is fair and reasonable as the Court deems fair... A dollar amount can not be figured on at this time.

Benny Johnson, the Plaintiff, asks this Court to prevail on justice... as this Court deems proper.

Respectfully Submitted,
Benny Johnson
12/05/24

Benny Johnson
DOC#1368576
HU# 3A-117
ERDCC
2727 Hwy. K
Bonne Terre, MO 63628

# Attachment of Evidence

1:24-cv-00194 SPM

OFFICE OF CHIEF DISCIPLINARY COUNSEL OCDC

SUPREME COURT OF MISSOURI

3327 AMERICAN AVENUE
JEFFERSON CITY, MISSOURI 65109-1016
PHONE: (573) 635-7400
FAX: (573) 635-2240

April 10, 2024

Mr. Matthew T. Estes, #1148408
ERDCC, 3-A-117
2727 Hwy. K
Bonne Terre, MO 63628

Re: Attorneys Justin Arentsen, William R. Butler, Leslie N. Hazel, Christopher G. Janvier, Christian Lehmberg, Jedd C. Schneider, Mary P. Tucka, & Peter B. Weinmann

Dear Mr. Estes:

This will acknowledge receipt of your complaints against the above-referenced attorneys.

The complaints you have made against these attorneys are matters that can be raised through the courts. We are not a separate system for having the same complaints considered.

After you have tried all the appellate and post-conviction procedures and if there is a finding of ineffective assistance of counsel, you may come back to this office with your complaints. If you do so, you should provide us with a copy of the decisions in your appeal post-conviction relief cases. We will then consider whether you have complaints that are appropriate for us to investigate. Please be advised that nothing we do would have any effect on your case or your release from confinement.

Sincerely,

Office of Chief Disciplinary Counsel

OFFICE OF CHIEF DISCIPLINARY COUNSEL OCDC

SUPREME COURT OF MISSOURI

3327 AMERICAN AVENUE
JEFFERSON CITY, MISSOURI 65109-1016
PHONE: (573) 635-7400
FAX: (573) 635-2240

April 10, 2024

Mr. Matthew T. Estes, #1148408
ERDCC, 3-A-117
2727 Hwy. K
Bonne Terre, MO 63628

Re: Attorneys Nicholas D. Jain & Jeffrey D. McCormick

Dear Mr. Estes:

This will acknowledge receipt of your complaint regarding Nicholas D. Jain and Jeffrey D. McCormick.

Your complaint suggests that the prosecutor who is handling your case is committing prosecutorial misconduct. The complaints you make against Mr. Jain and Mr. McCormick are matters that can be raised by motion, appeal or an appropriate motion for post-conviction relief. We are not a separate system for having the same complaints considered.

You should pursue available remedies through the courts. If there is a finding by a court that these attorneys' actions resulted in prosecutorial misconduct, you should provide us with a copy of the court decision regarding that issue promptly upon the issuance of such a decision but no later than 90 days before the expiration of five (5) years from the date our office received this initial complaint against Mr. Jain and Mr. McCormick. This office will then review that matter and determine what, if any, action would be appropriate.

Sincerely,

Office of Chief Disciplinary Counsel

OFFICE OF CHIEF DISCIPLINARY COUNSEL OCDC

SUPREME COURT OF MISSOURI

3327 AMERICAN AVENUE
JEFFERSON CITY, MISSOURI 65109-1016
PHONE: (573) 635-7400
FAX: (573) 635-2240

April 10, 2024

Mr. Matthew T. Estes, #1148408
ERDCC, 3-A-117
2727 Hwy. K
Bonne Terre, MO 63628

Re: Your Letter Dated February 2, 2024

Dear Mr. Estes:

This will acknowledge receipt of your complaint against former Attorney General Eric S. Schmitt. You expressed concerns that former Attorney General Schmitt failed to properly investigate and take other actions regarding your case.

Please understand that this office can only seek to discipline the license of an attorney for certain specific types of conduct which are set out in the Rules of Professional Conduct. The matters you raise in your correspondence involve legal issues which are within the jurisdiction of the courts to resolve. This office has no jurisdiction in such matters. You should pursue available remedies through the courts. Additionally, the Attorney General has discretion in deciding how to carry out the duties of his office. Our office does not have jurisdiction regarding the discretionary actions taken by the Attorney General.

Based on the information provided and our review of the matter, the office has made a determination that it would not be appropriate to open an investigative file in this matter.

You should consult with a private attorney for any legal advice or assistance that you may need.

Sincerely,

Office of Chief Disciplinary Counsel

# COMMISSION ON RETIREMENT, REMOVAL AND DISCIPLINE

GARY M. GAERTNER, JR.
CHAIR
One Post Office Square
St. Louis, Missouri 63101

EDDY A. JUSTICE
SECRETARY
HEATHER S. HALL
LAURA J. JOHNSON
REBECCA L. LEONARD
ANGEL M. WOODRUFF

STATE OF MISSOURI

JAMES M. SMITH
ADMINISTRATOR AND COUNSEL

2190 S. MASON ROAD, SUITE 201
ST. LOUIS, MO 63131

Telephone: (314)966-1007
Facsimile: (314)966-0076

E-mail: jim.smith@courts.mo.gov

June 12, 2024

Mr. Matthew T Estes #1148408
ERDCC, HU 3-A-117
2727 Highway K
Bonne Terre, MO 63628

Dear Mr. Estes

This is to acknowledge receipt of your most recent correspondence postmarked June 7, 2024 concerning your complaint against Judges Robert Mayer, Joseph Satterfield and John Speilman.

In relation to the correspondence from this Commission informing you that your files had been closed, we were in error to not to list Judge John Spielman as one of the judges named in your complaint. We regret this error. However, please know that your complaints against Judge Spielman were reviewed by this Commission and the consensus was to close your file relative to that complaint as well.

Despite your files being closed, a copy of your recent correspondence has been circulated to the Commission for their review. In the event they vote to reopen your complaints you will be so informed.

Otherwise, the files will remain closed.

Sincerely,

James M. Smith
Administrator and Counsel

# COMMISSION ON RETIREMENT, REMOVAL AND DISCIPLINE

CARY J. MOGERMAN
CHAIR
120 S Central Avenue, Suite 1800
St. Louis, MO 63105

GARY M. GAERTNER, JR.
SECRETARY

MICHELLE D. AYCOCK

CARLTON R. CALDWELL

LAURA J. JOHNSON

PATRICK B. STARKE

STATE OF MISSOURI

JAMES M. SMITH
ADMINISTRATOR AND COUNSEL

2190 S. MASON ROAD, SUITE 201
ST. LOUIS, MO 63131

Telephone: (314)966-1007
Facsimile: (314)966-0076

E-mail: jim.smith@courts.mo.gov

October 18, 2021

Mr. Benny Johnson
DUNKLIN COUNTY JAIL
1175 Floyd Street
Kennett, Missouri 63857

COPY

Dear Mr. Johnson:

Please be advised that the Commission on Retirement, Removal and Discipline has completed its review of your complaint against Judge Joe Z Satterfield.

The Commission does not have the authority to consider a complaint concerning judicial error, mistake in the application of law, or other legal reasons for appeals. The Commission cannot review judicial decisions because such is the role of the appellate courts. Violations of the Code of Judicial Conduct are the only matters over which the Commission has authority.

At the conclusion of its review, the Commission voted that there was no legal basis to proceed. Consequently, the file has been closed.

Sincerely,

James M. Smith
Administrator and Counsel

# COMMISSION ON RETIREMENT, REMOVAL AND DISCIPLINE

CARY J. MOGERMAN
CHAIR
120 S Central Avenue, Suite 1800
St. Louis, MO 63105

GARY M. GAERTNER, JR.
SECRETARY
MICHELLE D. AYCOCK
CARLTON R. CALDWELL
LAURA J. JOHNSON
PATRICK B. STARKE

STATE OF MISSOURI

JAMES M. SMITH
ADMINISTRATOR AND COUNSEL

2190 S. MASON ROAD, SUITE 201
ST. LOUIS, MO 63131

Telephone: (314)966-1007
Facsimile: (314)966-0076

E-mail: jim.smith@courts.mo.gov

July 8, 2021

Mr. Benny Johnson
DUNKLIN COUNTY JAIL
1175 Floyd Street
Kennett, Missouri 63857

COPY

Dear Mr. Johnson:

This is to acknowledge receipt of your complaint against Judge Joe Z Satterfield.

The Commission on Retirement, Removal and Discipline only has jurisdiction over ethical violations of judges. The Commission has no authority to review decisions such as whether to set bond or whether to grant continuances. These are matters for the appellate courts.

Your complainant alleges that the Judge has a conflict in your case due to his alleged ownership of the jail, his ownership of a meat market with the prosecutor and having worked in the same firm as the prosecutor. In order for the Commission to review these allegations you will need to provide whatever proof you have to support them. Statements of witnesses, transcript pages, docket sheets or whatever proof you have to support your claims of bias should be sent to the Commission. Also as you have had counsel for these proceedings, it would be helpful for you to have your attorney provide a statement concerning your allegations and to advise the Commission of what, if any, unethical conduct the attorney observed on the part of the Judge during his handling of the case.

A copy of your complaint in its present form has been circulated to each member of the Commission for their evaluation. Any additional correspondence received will be forwarded to each member of the Commission for their review.

You will be informed of the eventual disposition of your complaint.

Sincerely,

James M. Smith

James M. Smith
Administrator and Counsel

# COMMISSION ON RETIREMENT, REMOVAL AND DISCIPLINE

LAURA J. JOHNSON
CHAIR
110 w Elm Street, Room 205
Ozark, MO 65721

CARY J. MOGERMAN
SECRETARY
MICHELLE D. AYCOCK
CARLTON R. CALDWELL
GARY M. GAERTNER, JR.
PATRICK B. STARKE

STATE OF MISSOURI

JAMES M. SMITH
ADMINISTRATOR AND COUNSEL

2190 S. MASON ROAD, SUITE 201
ST. LOUIS, MO 63131

Telephone: (314)966-1007
Facsimile: (314)966-0076

E-mail: jim.smith@courts.mo.gov

January 24, 2023

Mr. Benny Johnson
#1368576 HU 3B-C09
ERDCC
2727 Highway K
Bonne Terre, MO 63628

Dear Mr. Johnson:

This is to acknowledge receipt of your request to get copies of correspondence concerning your complaint against Judge Joe Z Satterfield.

I have enclosed your correspondence to this Commission as well as two letters sent to you advising that we had opened a file and the letter advising you that we had closed your file.

Any internal documents, including correspondence from a judge, are proprietary and are not released to the public per Supreme Court Rule 12 relating the Commission's internal confidential correspondence.

Sincerely,

James M Smith

James M. Smith
Administrator and Counsel

Case No. 1:24-cv-00194 SPM 12/09/24

# Attachment of Witnesses

Dennis Loyd
18136 Robert Dr.
Malden, MO 63863
573-217-8803

Mary Loyd
18136 Robert Dr.
Malden, MO 63863
573-217-8423

Charles Johnson
18188 Robert Dr.
Malden, MO 63863
573-276-5319

Randi Baker
Witness will provide address

Krystal Santos
Witness will provide address

David Reed
Witness will provide address

Respectfully Submitted,
Benny Johnson
Benny Johnson
DOC# 1368576
HU# 3A-117
ERDCC
2727 Hwy. K
Bonne Terre, MO 63628

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
SOUTHEASTERN DIVISION
555 INDEPENDENCE STREET
CAPE GIRARDEAU, MISSOURI 63703

OFFICIAL BUSINESS

3A
117

SAINT LOUIS MO 630
4 JAN 2025 PM 8

quadient
FIRST-CLASS MAIL
IMI
$000.97
01/03/2025 ZIP 63701
043M30227131
US POSTAGE

JAN 08 2025

Special Mail
USDC - Eastern Missouri

Benny Johnson - #1368576 HU#3A-117
ERDCC
2727 Highway K
Bonne Terre, MO 63628

Received
01/14/2025

63628-343027

SRP,CLOSED,DOCSCAN,PSLC1,SPM-2

# U.S. District Court
## Eastern District of Missouri (Cape Girardeau)
## CIVIL DOCKET FOR CASE #: 1:24-cv-00194-SPM

Johnson v. Satterfield et al
Assigned to: Magistrate Judge Shirley Padmore Mensah
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 10/17/2024
Date Terminated: 11/22/2024
Jury Demand: None
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**Benny Johnson**

represented by **Benny Johnson**
1368576
ERDCC
Eastern Reception Diagnostic and
Correctional Center
2727 Highway K
Bonne Terre, MO 63628
Email:
PRO SE

V.

**Defendant**

**Joe Z. Satterfield**
*Court Judge, Division I*

**Defendant**

**Robert N. Mayer**
*Circuit Court Judge*

**Defendant**

**Honorable John C. Speilman**
*Circuit Court Judge*

**Defendant**

**Nicholas D. Jain**
*Prosecutor*

**Defendant**

**Russell Oliver**
*Prosecutor*

**Defendant**

**Tim G. Pulley**
*Missouri Highway Patrol*

**Defendant**

**Jeremy Jones**
*Criminalist Supervisor*

**Defendant**

**Todd Watson**

**Defendant**

**Aaron Grainger**

**Defendant**

**Josh Roberts**

**Defendant**

**John McMullan**
*Attorney*

**Defendant**

**James Smith**

**Defendant**

**Justin Claibourn**
*Deputy*

**Defendant**

**Nicole Green**
*Administrator Dunklin County Justice Center*

**Defendant**

**Ashley Graham**
*Nurse*

**Defendant**

**Dewayne Rhody**
*Medical Lab Technician*

**Defendant**

**Kelli Asher**

**Defendant**

**June Robinson**

**Defendant**

**Tayhlar Santana**

**Defendant**

**Brant Bristow**

**Defendant**

**Jesse Curtis**

**Defendant**

**Brian Wicker**

**Defendant**

**Bob Holder**

**Defendant**

**Carl Heifner**

Email All Attorneys (will not send to terminated parties)

Email All Attorneys and Additional Recipients (will not send to terminated parties)

| Date Filed | # | Docket Text |
|---|---|---|
| 10/17/2024 | 1 | DCM COMPLAINT against defendant All Defendants, filed by Benny Johnson.(JMC) (Entered: 10/17/2024) |
| 10/17/2024 | 2 | MOTION for Leave to Proceed in forma pauperis under 42:1983 (prisoner) by Plaintiff Benny Johnson. (JMC) (Entered: 10/17/2024) |
| 10/17/2024 | 3 | Certified Inmate Account Statement by Plaintiff Benny Johnson. (JMC) (Entered: 10/17/2024) |
| 10/17/2024 | | Case Opening Notification. Judge Assigned: U.S. Magistrate Judge Shirley P. Mensah. All parties must file the Notice Regarding Magistrate Judge Jurisdiction Form consenting to or opting out of the Magistrate Judge jurisdiction. Click here for the instructions. (JMC) (Entered: 10/17/2024) |
| 10/17/2024 | | ***Complaint Letter Created. This is to advise you that this office has received and filed your complaint and has assigned it the above-referenced case number. (JMC) (Entered: 10/17/2024) |
| 10/17/2024 | | ***Complaint Letter Processed (see notice of electronic filing for distribution list) Thu Oct 17 15:00:53 CDT 2024 (admin,) (Entered: 10/17/2024) |
| 10/17/2024 | 4 | Pursuant to Local Rule 2.08, the assigned/referred magistrate judge is designated and authorized by the court to exercise full authority in this assigned/referred action or matter under 28 U.S.C. Sec. 636 and 18 U.S.C Sec. 3401, including any case budgeting matters. (auto) (Entered: 10/17/2024) |
| 11/22/2024 | 5 | OPINION MEMORANDUM re: 2 MOTION for Leave to Proceed in forma pauperis under 42:1983 (prisoner) filed by Plaintiff Benny Johnson. IT IS HEREBY ORDERED that plaintiff's motion seeking leave to commence this action without prepaying fees or costs [ECF No. 2] is GRANTED. IT IS FURTHER ORDERED that, within twenty-one |

| | | |
|---|---|---|
| | | (21) days of the date of this order, Plaintiff must pay an initial filing fee of $37.58. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding. IT IS FURTHER ORDERED that plaintiff's claims of unlawful conditions of confinement and deliberate indifference to his serious medical needs are SEVERED AND DISMISSED without prejudice. See Fed. R. Civ. P. 21. IT IS FURTHER ORDERED that all remaining federal claims in this action are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). IT IS FURTHER ORDERED that any state law claims brought by plaintiff in this action are DISMISSED without prejudice. See 28 U.S.C. § 1367(c). A separate Order of Dismissal shall accompany this Memorandum and Order. (Initial Partial Filing Fee due by 12/13/2024.) Signed by District Judge Henry Edward Autrey on 11/22/2024. (CMH) (Entered: 11/22/2024) |
| 11/22/2024 | 6 | ORDER OF DISMISSAL pursuant to 28USC1915(e)(2)(B) IT IS HEREBY ORDERED that plaintiff's complaint is DISMISSED, Without Prejudice IT IS HEREBY CERTIFIED that an appeal from this dismissal would not be taken in good faith pursuant to 28USC1915(a)(3). IT IS HEREBY ORDERED that plaintiff's claims of unlawful conditions of confinement and deliberate indifference to his serious medical needs are SEVERED AND DISMISSED without prejudice. See Fed. R. Civ. P. 21.IT IS FURTHER ORDERED that all remaining federal claims in this action are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).IT IS FURTHER ORDERED that any state law claims brought by plaintiff in this action are DISMISSED without prejudice. See 28 U.S.C. § 1367(c).IT IS HEREBY CERTIFIED that an appeal from this action would not be taken in good faith. Signed by District Judge Henry Edward Autrey on 11/22/2024. (CMH) (Entered: 11/22/2024) |
| 11/22/2024 | 7 | Letter from Clerk sent to pro-se prisoner re:FRAP - all procedures for filing Notice of Appeal (copy of motion to proceed IFP on appeal attached and mailed) (CMH) (Entered: 11/22/2024) |
| 12/09/2024 | 8 | SUPPLEMENTAL re 1 DCM Complaint by Plaintiff Benny Johnson. (CMH) (Entered: 12/09/2024) |
| 12/30/2024 | 9 | Request for status of appeal by Plaintiff Benny Johnson. NOTE: Copy of 12/09/2024 filing and current docket sheet mailed to Benny Johnson. No appeal of record to date in this case. (CMH) (Entered: 01/03/2025) |

Case No. 1:24-cv-00194 SPM

# Attachment of Witnesses

Dennis Loyd
18136 Robert Dr.
Malden, MO 63863
573-217-8803

Mary Loyd
18136 Robert Dr.
Malden, MO 63863
573-217-8423

This is all that was received on 12/9/24.
Nothing received on 12/5/24.

Charles Johnson
18188 Robert Dr.
Malden, MO 63863
573-276-5319

Randi Baker
Witness will provide address

Krystal Santos
Witness will provide address

David Reed
Witness will provide address

Respectfully Submitted,
Benny Johnson
Benny Johnson
DOC# 1368576
HU# 3A-117
ERDCC
2727 Hwy. K
Bonne Terre, MO 63628

Benny Johnson #1368576
HU# 3D-111
ERDCC
2727 Hwy. K
Bonne Terre, MO 63628

RECEIVED
FEB 12 2025
BY MAIL

RECEIVED
FEB 12 2025
BY MAIL

ST LOUIS MO P
FRI 07 FEB 20

FREEDOM FOREVER USA

MAILED FROM
JAN 16 2025
ERDCC MAILROOM

U.S. District Court
Eastern Division of
111 S. Tenth Stree
St. Louis, MO

"This correspondence is from an inmate in the custody of the Missouri Department of Corrections. The Department is not responsible for the contents of this correspondence. For information about the Department or to verify information about the offender, please visit our website at www.doc.mo.gov"

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| BENNY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-CV-00194 SPM |
| | ) | |
| JOE Z. SATTERFIELD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

Before the Court is plaintiff's notice of appeal, as well as plaintiff's motion to proceed in forma pauperis on appeal. Appended to plaintiff's notice of appeal is a post-dismissal motion to amend the complaint, with an attached handwritten proposed amended complaint numbering forty-six (46) pages. [ECF Nos. 10 and 11]. After review of the record, the Court will deny both plaintiff's motion to proceed in forma pauperis on appeal and plaintiff's post-dismissal motion to amend his complaint. The Clerk will be instructed to process plaintiff's appeal.

**Background**

Plaintiff Benny Johnson, an inmate currently incarcerated at Eastern Reception Diagnostic and Correctional Center (ERDCC), filed the instant action pursuant to 42 U.S.C. § 1983 on October 17, 2024. [ECF No. 1]. Plaintiff's twenty-one (21) page handwritten complaint was filed against twenty-four (24) defendants and contained a multitude of claims, many of which were conclusory and lacked a causal connection to a specific defendant. *See id.* Nonetheless, on November 22, 2024, the Court granted plaintiff's motion to proceed in forma pauperis and reviewed plaintiff's complaint pursuant to 28 U.S.C. § 1915 for frivolousness, maliciousness and failure to state a claim. [ECF Nos. 5 and 6].

The Court discerned that the allegations in plaintiff's complaint appeared to relate to four issues: (1) purported civil rights violations involving plaintiff's arrest in July of 2017; (2) purported civil rights violations concerning his criminal prosecution in Dunklin and Stoddard County Courts between July of 2017 and October 2021; (3) claimed civil rights violations relating to his incarceration in both the Dunklin County and the Stoddard County Jails; (4) and purported allegations of deliberate indifference to his serious medical needs during his incarceration at both the Dunklin County and Stoddard County Jails.

In a twenty-five (25) page Opinion, Memorandum and Order, the Court recounted plaintiff's underlying state court criminal actions, as found on Missouri's online case management system, Missouri Case.Net, as well as those in the complaint. The Court then separated plaintiff's allegations against each of the twenty-four (24) named defendants, according to when the allegations purportedly occurred and, if pertinent, at which jail facility (Stoddard County Jail or Dunklin County Jail). The Court then differentiated between the type of claim being brought by plaintiff, *i.e.,* whether he was alleging false imprisonment and/or false arrest, unlawful conditions of confinement, judicial or prosecutorial misconduct or deliberate indifference to his serious medical needs. Last, the Court identified the defendants that plaintiff had failed to make any allegations against in his complaint.

After doing the aforementioned, the Court was able to dismiss seven (7) defendants from the action who plaintiff had failed to bring specific allegations against in his complaint.[1] *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff). Five additional defendants were dismissed because they were not state

[1]Aaron Grainger, James Smith, Nicole Green, June Robinson, Jesse Curtis, Bob Holder and Carl Heifner.

actors[2] subject to suit under 42 U.S.C. § 1983.[3] The Court then severed (and dismissed without prejudice), in accordance with Federal Rule of Civil Procedure 21, plaintiff's claims for unlawful conditions of confinement and deliberate indifference to his serious medical needs at both the Dunklin County and Stoddard County Jails, because they were improperly joined. Plaintiff was informed that if he wished to file new actions relating to those claims he could do so, but his Stoddard County claims were separate and distinct from his Dunklin County claims and should therefore be filed in separate lawsuits.

Plaintiff's claims relating to events which occurred prior to October 17, 2019, were found to be time-barred and subject to dismissal. *See Walker v. Barrett,* 650 F.3d 1198, 1205 (8th Cir. 2011); *Sulik v. Taney Cty., Mo.,* 393 F.3d 765, 767 (8th Cir. 2005); Mo. Rev. Stat. § 516.120(4). Plaintiff's claims attacking his criminal conviction were dismissed as *Heck*-barred. *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994). The Court then dismissed plaintiff's claims against Judges Satterfield, Mayer and Speilman, as well as Prosecutors Jain and Oliver, on grounds of prosecutorial and judicial immunity. *See Imbler v. Pachtman,* 424 U.S. 409, 430–31 (1976); *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 925 (8th Cir. 2020). And plaintiff's criminal attorney, John McMullan, was dismissed from the present action due to plaintiff's failure to allege that McMullan acted under color of state law. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981). Last, the Court noted that there was no amendment that the Court could envision that could save

---

[2]To state a claim under § 1983, a plaintiff must establish that a person acting under color of state law committed the acts which form the basis of the complaint. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds, *Daniels v. Williams,* 474 U.S. 327, 328 (1986). To state a claim against a private actor under § 1983, a plaintiff must allege an agreement or meeting of the minds between the private and state actors, and a corresponding violation of the plaintiffs' rights under the Constitution or laws of the United States. *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 536 (8th Cir.1999). Plaintiff failed to do so in this instance.

[3]Justin Claibourn (Prosecution Witness), Kelli Asher (Juror), Tayhlar Santana (Prosecution Witness), Brant Bristow (Prosecution Witness) and Brian Wicker (Tow Truck Driver).

the complaint from dismissal. Additionally, the Court declined to exercise supplemental jurisdiction over any state law claims that plaintiff wished to bring. *See* 28 U.S.C. § 1367(c).

**Discussion**

**A. Plaintiff's Post-Dismissal Motion to Amend the Complaint**

Approximately three months after dismissal of this action, plaintiff nevertheless attempts to amend his dismissed pleading. Under the Federal Rules of Civil Procedure, the Court should freely grant leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). However, following dismissal, the right to amend a complaint under Fed. R. Civ. P. 15(a) terminates. *Humphreys v. Roche Biomedical Laboratories, Inc.,* 990 F.2d 1078, 1082 (8th Cir. 1993) (internal citation omitted).

Leave to amend may still be granted in the Court's discretion, *id.,* but a plaintiff does not enjoy the absolute or automatic right to amend a deficient complaint. *See U.S. ex rel. Roop v. Hypoguard USA, Inc.,* 559 F.3d 818, 822 (8th Cir. 2009). In other words, "interests of finality dictate that leave to amend should be less freely available after a final order has been entered." *Id.* at 823. According to the Eighth Circuit, this Court has "considerable discretion to deny a post-judgment motion for leave to amend because such motions are disfavored." *Id.* at 824.

Furthermore, amendment is properly denied when allowing it would be futile because the proposed amended complaint cannot withstand initial review under 28 U.S.C. § 1915(e)(2). *See Baptist Health v. Smith,* 477 F.3d 540, 544 (8th Cir. 2007) (stating that "there is no absolute right to amend" and that a court may deny a motion to amend for multiple reasons including a finding of futility) (internal citation omitted); *Holloway v. Dobbs,* 715 F.2d 390, 392 (8th Cir. 1983) (finding district court justified in denying plaintiff leave to amend because the "complaint, as amended, could not withstand a motion to dismiss."). *E.g., Coleman v. Ramada Hotel Operating*

*Co.,* 933 F.2d 470, 473 (7th Cir. 1991) ("Although the federal rules generally favor a liberal amendment policy, justice does not demand that [a plaintiff] be given leave to append frivolous or repetitive allegations to [his or] her complaint at any stage in the proceedings.").

Plaintiff's proposed amended complaint is handwritten and not on a Court-provided form as required under Local Rule 2.06(A). Furthermore, as noted above, along with exhibits, the proposed amended complaint numbers forty-six (46) pages and is brought against twelve (12) defendants. Just a cursory review shows that it suffers from the same problems as those of the original complaint. Namely, it contains three (3) enumerated counts: (1) corruption; (2) cruel and unusual punishment; and (3) miscarriage of justice. However, within each "count" there are a multitude of claims against each of the defendants, as well as against many additional defendants not specifically enumerated in the caption, which is in direct violation of Federal Rules of Civil Procedure 18 and 20. Plaintiff cannot attempt to cram every claim he has against any and all defendants in one lawsuit. He was already informed of the joinder limitations in the Court's November 22, 2024 Opinion, Memorandum and Order.

Additionally, plaintiff is again attempting to litigate issues relating to his 2017 arrest and pretrial proceedings which occurred prior to the five-year statute of limitations under 42 U.S.C. § 1983. This Court has already held that these claims are barred and cannot be lawfully raised. Moreover, plaintiff cannot attempt to couch his claims as "corruption" or "miscarriage of justice" to get around the statutory bar.

Furthermore, although not named as defendants in the caption of the proposed amended complaint, many of plaintiff's claims in the proposed pleading are brought against state court judges and prosecutors. The Court has already ruled that judges and prosecutors have immunity from such claims. And to the extent plaintiff wishes to reassert his deliberate indifference and/or

conditions of confinement claims against either Dunklin County or Stoddard County (or the Jails associated with either), the Court has already told plaintiff he needs to file separate actions relative to those claims.

Plaintiff's proposed pleading does nothing but attempt to rehash his earlier arguments which this Court previously addressed in its twenty-five (25) page Opinion, Memorandum and Order. After reviewing plaintiff's allegations in the proposed amended complaint, the Court finds that allowing plaintiff to file this pleading would be futile because the proposed amended complaint cannot withstand initial review under 28 U.S.C. § 1915(e)(2). The motion to file the amended complaint will therefore be denied.

**B. Plaintiff's Motion to Proceed in Forma Pauperis on Appeal**

On November 22, 2024, the Court dismissed this case pursuant to 28 U.S.C. § 1915(e)(2)(B). [ECF Nos. 5 and 6]. When the Court dismissed this action, it certified in writing that an appeal from the dismissal would not be taken in good faith. *See id.*; 28 U.S.C. § 1915(a)(3). As a result, plaintiff's motion for leave to proceed in forma pauperis on appeal will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's post-dismissal motion to amend his complaint [ECF No. 10] is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to proceed in forma pauperis on appeal [ECF No. 11] is **DENIED.** The Clerk shall process plaintiff's appeal.

**IT IS FURTHER ORDERED** that an appeal of this Order would not be taken in good faith.

Dated this 14th day of February, 2025.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

US Court of Appeals - Eighth Circuit
NOA Supplement

**Caption:** Johnson v. Satterfield et al

**USCA#:**

**Case Number:** 1:24-CV-00194-SPM

**Plaintiff:** BENNY JOHNSON

**Defendant:** JOE Z. SATTERFIELD, et al.

**Attorney:** pro se

**Attorney:** N/A

**Court Reporter(s):**

Please return files and documents to: Clerk for Eastern District of Missouri

Person to contact about the appeal: Jessica Carter at moed.uscourts.gov

| Length of trial | Fee: | IFP: | Pending IFP Motion |
|---|---|---|---|
| N/A | | None | No |
| **Counsel:** | **Pending Motions:** | **Local Interest:** | **Simultaneous Release:** |
| No | No | No | No |

**Criminal Cases/Prisoner Pro Se Cases Only:**

Is defendant incarcerated?: Yes Where: ERDCC

**Please list all other defendants in this case if there were multiple defendants:**